Roberto Ayuso MANGUAL, et al.,
Plaintiffs, Appellants,

v.

GENERAL BATTERY CORPORATION,
et al., Defendants, Appellees.

No. 82–1857.

United States Court of Appeals,
First Circuit.

Submitted April 7, 1983.

Decided June 22, 1983.

Rehearing Denied July 13, 1983.

Pedro J. Varela, Hato Rey, P.R., on brief for plaintiffs, appellants.

Paul J. Levine, Ana E. Landa, and Morgan, Lewis & Bockius, Miami, Fla., on brief, for defendants, appellees.

Before BOWNES and BREYER, Circuit Judges, and TAURO,* District Judge.

BOWNES, Circuit Judge.

This is an appeal from the district court's dismissal of a complaint for lack of in personam jurisdiction and failure to respond to a motion to dismiss. According to the complaint brought by Roberto Ayuso Mangual and his wife and child, Ayuso suffered a total disability as a result of his being exposed to lead dust while working at the Carolina, Puerto Rico, plant of General Battery International Corporation (GBIC). The complaint alleges negligence against General Battery Corporation, GBIC's parent corporation; Northwest Industries, Inc., the sole owner of GBC; and several individual officers of both GBIC and GBC. Traveler's Insurance Company, insurer of the defendants, was sued under the direct action statute of Puerto Rico. GBIC itself was immune from suit under the Puerto Rico Workmen's Compensation Act. Puerto Rico Laws Ann. tit. 11, § 21.

A short chronology of the proceedings is necessary in order to understand the issues

* Of the District of Massachusetts, sitting by designation.

raised on appeal. The original complaint was filed on May 21, 1979. It was amended to include all the defendants referred to above on December 21, 1981. On February 8, 1982, in response to the defendants' motion for a protective order, the district court ordered that the plaintiffs take the depositions of the individual defendants in Reading, Pennsylvania, "at the earliest possible date." The court further ordered that

> [p]laintiffs shall file their opposition to the Motion to Dismiss for lack of *in personam* jurisdiction within 30 days from the date the last one of the above depositions is taken. Plaintiffs shall advise the Court of the date of the depositions as soon as possible. The Motion to Dismiss is meanwhile held in abeyance.

On February 10 the defendants filed a motion to dismiss arguing that the court lacked in personam jurisdiction over all of the defendants and that the action was barred by the statute of limitations as against defendants Travelers and one of the individual defendants, J.A. Bitler.

On February 22, 1980, the plaintiffs filed a notice to take the defendants' depositions on March 8 and 9. The plaintiffs cancelled these dates on February 25 and on March 5 filed an amended notice to take the depositions on May 5 and 6 because defendants had requested additional time for preparation.

On March 8, 1982, GBC requested the court's leave to withdraw its motion to dismiss. The court granted the request on March 23, but at the same time dismissed the complaint as to all of the other defendants because no opposition to the motion to dismiss had been filed by the plaintiffs.[1] On March 26, 1980, the same day that judgment was entered, the plaintiffs moved the district court to reconsider its order because the depositions had not yet been taken. This motion was denied. The plaintiffs filed a second motion for reconsideration on April 26, 1982. The district court never ruled upon that motion.

Despite the dismissal of the complaint as to Northwest, Inc., Travelers and the individual defendants, discovery went forward. Depositions were taken and the parties submitted memoranda on the question of whether the court had jurisdiction over all of the defendants. On October 7, 1982, the district court, in a decision and order discussing only the court's jurisdiction over GBC, dismissed the complaint against GBC for lack of jurisdiction. On November 2, 1982, plaintiffs filed a notice of appeal.[2]

## I.

The district court dismissed the complaint as to Northwest Industries, Inc., Travelers Insurance Company, and the individual defendants, Peter Noznesky, Robert Restrepo, John Mastromarino and J.A. Bitler, because the plaintiffs failed to file an opposition to the motion to dismiss. Such

---

1. The district court's order stated: "The request of Defendant General Battery Corporation to withdraw the Motion to Dismiss is granted. As to all other Defendants, no opposition having been filed, the motion to Dismiss is *Granted*."

2. Although plaintiffs filed no notice of appeal from the March 26 order, their November 2 notice serves as notice of appeal. Rule 54(b) of the Federal Rules of Civil Procedure states that:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon express determination that there is no just reason for delay and* upon an express direction for entry

of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties .... (Emphasis added.)

Here, the court never made an express determination that there was no just reason for delay. Without this certification, the March 26 judgment cannot operate as a valid final judgment subject to appeal. *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435–36, 76 S.Ct. 895, 899, 100 L.Ed. 1297 (1956). The March 26 "judgment" therefore was an interlocutory order subject to appeal when the district court entered final judgment in the case on October 12. *Baker v. Limber,* 647 F.2d 912, 916 (9th Cir.1981).

an order will be reversed only when the district court has abused its discretion. *See Damiani v. Rhode Island Hospital,* 704 F.2d 12 (1st Cir.1983) and cases cited therein. We think for the following reasons that it was an abuse of discretion to dismiss.

Under the district court's order of February 9, 1982, the plaintiffs had thirty days from the time in which they deposed the individual defendants to file a response to the motion to dismiss. The order specifically stated that the motion to dismiss would be held in "abeyance" until that time. But when the complaint was dismissed by the district court the depositions, which had been scheduled for May 5 and 6, had still to be taken. We can only conclude that the district court contravened its own order by dismissing the complaints when it did.

We recognize that the depositions had been postponed beyond their original date, notwithstanding the court's order to take them "at the earliest possible date." It would appear, however, that the postponement was made to accommodate the defendants; certainly they did not object to it. It may be that the district court had good reason for the dismissal, but the record is bereft of any basis for finding that the plaintiffs were in default. We can only proceed on the record before us and we can nowhere find that the court modified or withdrew its order. Nor are there any findings that scheduling the depositions for May 5 and 6 were contrary to the court's instructions. We, therefore, must hold that the court acted without sufficient justification and reverse the dismissal.

The defendants argue that even if the district court erred the error was harmless because the court in fact lacked in personam jurisdiction over them. We think that the record here is too sparse for us to reach any such conclusion as to defendants Northwest and Travelers and that the issue should first be considered by the district court after the plaintiffs have had an opportunity to present evidence on the question. As to the individual defendants, however, the record is fairly complete. After the case was dismissed against them, their depositions were taken in connection with the case against GBC. The parties then filed memoranda of law on the issue of jurisdiction over GBC which contained discussions of the court's jurisdiction over the individual defendants. More importantly, because the individual defendants were all employees of GBC, and GBC was responsible for their actions relating to the plaintiff, *see infra,* the district court's review of its jurisdiction over GBC necessarily required it to examine the individual defendants' contacts with the forum. Accordingly, we think it appropriate for us to decide the issue of the court's in personam jurisdiction over the individual defendants at this time.

■ We find that the district court's dismissal of the case against defendants Restrepo and Mastromarino was harmless error because the court lacked jurisdiction over them, but that the court had jurisdiction over defendants Noznesky and Bitler. In a diversity case, such as the present, the district court's personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute. Charles Wright & Arthur Miller Federal Practice and Procedure § 1075 (1969). Puerto Rico's long-arm statute states in relevant part:

Substitute Service

(a) Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal jurisdiction over said nonresident as if he were a resident of the Commonwealth of Puerto Rico, if the action or claim arises as a result of the following:

(1) Such person or his agent carries out business transactions within Puerto Rico; or

(2) Executes by himself or through his agent, tortious acts within Puerto Rico . . . .

P.R.Laws Ann. tit. 32, App. II R. 4.7.

■ This statute provides no basis for the court's exercise of jurisdiction over defendants Restrepo and Mastromarino. Restrepo and Mastromarino were corporate officers of both GBIC and GBC. Each worked and resided in Pennsylvania. As

far as the record shows, their only relationship with the forum resulted from the fact that they were officers of a Puerto Rican corporation. This alone is insufficient to establish jurisdiction over the defendants. In *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir.1980), we stated:

> The general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation. There must be an independent basis for asserting jurisdiction over the [nonresident agents].

*Id.* at 906 (citations omitted).

Here, both Restrepo and Mastromarino made several business trips to Puerto Rico. There is nothing in the record, however, to suggest that these trips, or any of their other dealings with GBIC, were causally related to the plaintiff's injury. Without such a causal nexus between the defendants' transactions in Puerto Rico and the claim, the defendants cannot be found to have carried "out business transactions within Puerto Rico" within the meaning of the long-arm statute. *Id.; Arthur H. Tomas Co. v. Superior Court of Puerto Rico,* 98 P.R.R. 864, 870 (P.R.1970).

Nor have the plaintiffs proven sufficient facts to establish jurisdiction over Restrepo and Mastromarino under R. 4.7(a)(2), the section of the long-arm statute concerning torts committed within the Commonwealth. In *Escude Cruz* we held that corporate officers may be reached under R. 4.7(a)(2) only when the plaintiff makes "some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury." 619 F.2d at 907. Here, plaintiffs have made no such showing. Affidavits filed by the defendants state that they had no personal involvement with the health or safety of GBIC employees and that they did not undertake to maintain or inspect health and safety equipment. These statements were not contradicted by anything disclosed during the depositions. The affidavits must therefore be taken as true. 619 F.2d at 907. Because defendants Mastromarino and Res-

trepo did not have a personal involvement in the plaintiff's injury, the court lacked in personam jurisdiction over them.

As to defendants Noznesky and Bitler, however, we believe that the record contains sufficient evidence of their possible personal involvement in the plaintiff's injury to support jurisdiction over them under R. 4.7(a)(2). Under that section, an individual is subject to suit in Puerto Rico if he "[e]xecutes by himself or through his agent tortious acts within Puerto Rico." The Supreme Court of Puerto Rico has not decided whether that section applies to wrongful acts committed outside of the state that cause injury within the state. But "Puerto Rico's 'long-arm' rule permits the exercise of jurisdiction to the full extent of constitutional authority." *Vencedor Mfg. Co., Inc. v. Gougler Industries,* 557 F.2d 886, 889 (1st Cir.1977). Where "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there," the forum may assert jurisdiction over him. *World-Wide Volkswagaen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In *Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 (1st Cir.1972), we held, in interpreting the Massachusetts long-arm statute that

> [w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.

*Id.* at 664 (footnote omitted). *Cf. Arthur H. Tomas Co. v. Superior Court of Puerto Rico,* 98 P.R.R. 864 (business transaction "within" Puerto Rico includes sending mail to Puerto Rico from another jurisdiction). Therefore, we think that jurisdiction may be asserted under 4.7(a)(2) where a defendant who has availed himself of the laws and benefits of Puerto Rico commits a tortious act within or without the Commonwealth that he knows or reasonably should know will cause injury within Puerto Rico.

In the instant case there can be little doubt that Noznesky availed himself of the

laws and benefits of Puerto Rico and acted in such a manner "that he could reasonably anticipate being haled into court" in Puerto Rico. 444 U.S. at 297, 100 S.Ct. at 567. Noznesky was president of a Puerto Rican company and as such earned his livelihood at least in part,[3] because of the corporation's activities in Puerto Rico. Noznesky also made trips to Puerto Rico and controlled decisions affecting the Carolina plant. More importantly, for the purposes of 4.7(a)(2) the record indicates an issue of fact concerning Noznesky's possible involvement in matters that might have caused the plaintiff's injury. Noznesky's affidavit attests that he had no involvement in matters concerning the health and safety of GBIC workers, but that statement is put in doubt by other evidence in the record. In his deposition Noznesky admitted that it was possible that he might have received oral reports about blood lead levels of GBIC employees. Plaintiff's exhibits show that Noznesky received written reports about blood lead levels. Because Noznesky was the corporate president and ultimately responsible for the corporation's actions, his involvement in the question of blood lead levels suggests that he might be legally responsible for plaintiff's injury either because of his acts or failure to act. Therefore, plaintiff has stated a prima facie tort. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d at 908. In reaching this decision we intimate no opinion as to Noznesky's actual liability; we merely find that the plaintiffs have established sufficient threshold evidence of Noznesky's personal involve-

ment in the plaintiff's injury to sustain jurisdiction under 4.7(a)(2).[4]

■ The record also contains evidence that Bitler was personally involved in matters relating to the plaintiff's injury. Bitler was GBC's vice-president for health and safety matters. In his deposition he stated that he worked as a consultant for GBIC and was responsible for the design of the Carolina plant's pollution control system and that he visited the plant and observed the system.[5]

## II.

■ The district court dismissed the complaint against GBC, the parent corporation, for lack of in personam jurisdiction. We reverse. We agree with the district court insofar as it found that GBC could not be subject to the court's jurisdiction merely because it owned GBIC. *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d at 905. Although there was evidence that major decisions were cleared with personnel in Pennsylvania, most of these executives actually were GBIC employees as well as GBC officers. Thus this evidence does not establish that GBC controlled GBIC. Moreover, plaintiffs' argument that GBIC is merely a shell of GBC undermines their own substantive claim because it would then follow that GBC was the plaintiff's actual statutory employer who would be immune from suit under the Puerto Rico Workmen's Compensation Act. Laws of P.R.Ann. tit. 11 § 2.

■ We think, however, that jurisdiction may be asserted under R. 4.7(a)(2). As

---

3. Noznesky's salary was actually paid by GBC.

4. Nor do we express any opinion as to whether Noznesky, as a corporate officer of plaintiff's employer, acting in his corporate capacity, might be immune from suit under the Puerto Rico Workmen's Compensation Act, P.R.Laws Ann. tit. 11 § 21, because of the fact that the tort alleged involved a breach of a nondelegable duty of the corporation. *See* 2A Larson Workmen's Compensation § 72.13 (1982). That issue, should it be raised by the parties, is one for the district court to decide initially. We merely find that plaintiff introduced sufficient facts of Noznesky's tortious conduct to sustain jurisdiction under R. 4.7(a)(2).

5. Defendants argue that plaintiff's injury was caused by the negligent installation of the control system by GBIC employees, not its negligent design by Bitler. We see nothing, however, in the record to suggest that plaintiffs are claiming that the system was negligently installed rather than negligently designed. Moreover, plaintiff does claim that the defendants failed to take precautions once they knew of the problem. The question of whether GBIC or GBC employees were actually responsible for the injury is one that should not be reached at this time. We hold only that plaintiffs have set forth sufficient facts connecting Bitler to the injury to sustain jurisdiction.

already discussed, plaintiff has adduced facts suggesting that Bitler might have committed tortious acts within Puerto Rico. Because Bitler was an agent of GBC and was acting in that capacity, tortious acts may be the basis of jurisdiction over GBC. Thus while GBC is not subject to suit because of its ownership of GBIC, jurisdiction may be asserted as it could be over any third-party, because its agent, acting as a consultant, committed tortious acts within the forum.[6]

█ The exercise of jurisdiction over GBC on the basis of Bitler's actions satisfies all constitutional requirements. Not only did GBC have contacts with Puerto Rico through Bitler's design of the pollution control system, but it has a long-term contractual relationship with GBIC and shares offices with it. While the parent-subsidiary relationship in itself is insufficient to justify the exercise of jurisdiction, the close relationship between the two companies is a relevant factor that may be considered. *See Volkswagen Interamericana, S.A. v. Rohlsen,* 360 F.2d 437, 441–42 (1st Cir.), *cert. denied,* 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966). Given all the facts in the record, GBC can be said to have availed itself of the laws and protection of Puerto Rico and could reasonably have foreseen the possibility of facing suit within the Commonwealth.

*Affirmed in part. Reversed in part.*

*Remanded.*

---

**6.** This is not to say that Bitler's relationship with GBIC was so independent as to preclude the district court from later finding that GBC is immune from suit under the statutory employer doctrine of the workmen's compensation law. *See Carmen Lusson v. Carter,* 704 F.2d 646 at 651–52 (1st Cir.1983) and cases cited therein. We merely hold that because Bitler was not an employee of GBIC and claimed to serve only as a consultant to GBIC, his actions may only be attributed to his employer GBC and serve to establish jurisdiction over it.