Cruz DIAZ, et al., Plaintiffs,

Maria L. Hernandez, et al.,
Plaintiffs Intervenors,

v.

BECTON DICKINSON & CO., S.A., et
al., Defendants.

Civ. No. 78–2327 HL.

United States District Court,
D. Puerto Rico.

Jan. 21, 1985.

Ernersto Maldonado Perez, Maldonado & Ortiz, San Juan, P.R., for plaintiffs.

Ernesto Rodriguez Suris, Miranda Cardenas, Otero, De Corral & Rodriguez, Old San Juan, P.R., Brian P. Mullen, New York City, for defendants.

Paul E. Summit, Orans, Elsen & Lupert, New York City, for Fairleigh S. Dickinson, Jr.

## OPINION AND ORDER

LAFFITTE, District Judge.

This matter is before us on motions for summary judgment filed by defendants, requesting dismissal of the complaint on the grounds that this Court lacks *in personam* jurisdiction over them.

Plaintiffs allege in their amended complaint filed on May 28, 1980, that they have suffered physical and mental damages due to mercury intoxication resulting from the negligence of all defendants in the operation of a thermometer manufacturing plant at Juncos, Puerto Rico. Defendants Becton Dickinson & Co. of New Jersey (BD) is the parent company of Becton Dickinson &

Co., S.A. (BDSA), a Panamanian corporation doing business in Puerto Rico, as well as of all subsidiaries organized under the trade name Becton-Dickinson. Codefendants Farleigh S. Dickinson, Jr., Henry F. Becton, and Wesley J. Howe were, during specific time intervals, members of the Board of Directors of Becton Dickinson, Becton Dickinson, S.A., and Becton Dickinson Puerto Rico, Inc. (BDPR). Also, codefendants Wesley J. Howe and Marvin A. Asnes, Henry Supplee, Robert G. Butler,[1] and Benedict Harter acted as officers of BDPR, which employed the plaintiffs herein. The Hartford Insurance Company allegedly insures all defendants.

On October 2, 1979, and May 19, 1980, respectively, codefendants Howe, Harter, Asnes, Supplee, Butler, BD, and BDSA moved to dismiss the previous complaint.[2] In view of the amended complaint filed on May 28, 1980, the above mentioned defendants filed, on June 3, 1980, a motion to dismiss for lack of personal jurisdiction adopting by reference their previous motions.[3] On December 29, 1980, plaintiffs filed a second amended complaint adding as defendants Insurance Company of North America and Aetna Casualty & Surety Company. By order entered on March 9, 1982, the complaint was dismissed as to these two last defendants.

On January 12, 1982, BDSA moved for summary judgment. On October 21, 1982, plaintiffs filed a lengthy opposition to defendants' motion to dismiss for want of *in personam* jurisdiction or summary judgment. Defendants replied on December 14, 1982, that the complaint as to BD should be dismissed since plaintiffs have not been able to prove that there is jurisdiction as to defendant BD. Finally, on January 31, 1983, the remaining individual defendants, Asnes, Harter, Howe, Becton Dickinson,

---

**1.** On October 21, 1982, plaintiffs moved for voluntary dismissal against Butler.

**2.** On December 6, 1979, Judge Torruella had denied the motion to dismiss as to the individual defendants.

**3.** On September 24, 1980, Judge Pérez-Giménez dismissed the amended complaint (later reinstated) as to Becton Dickinson and Co., and denied the motion to dismiss as to BDSA, which had before that date admitted it was doing business in Puerto Rico.

and Supplee replied to plaintiffs' brief of October 21, 1982.

■ In a diversity case, as in the present action, the federal district court's personal jurisdiction over a non-resident defendant is governed by the forum's long-arm statute. Therefore, a federal court has jurisdiction over a non-resident defendant only to the extent permitted by the long-arm statute of the forum. *Quasha v. Shale Development Corp.*, 667 F.2d 483, 484–85 (5th Cir.1982). Puerto Rico's long-arm statute provides two possible independent basis for jurisdiction in this case:

(a) Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal jurisdiction over said non-resident as if he were a resident of the Commonwealth of Puerto Rico, if the action or claim arises as a result of the following:

(1) Such person or his agent carries out business transactions within Puerto Rico;

(2) Executes by himself or through his agent, tortious act within Puerto Rico. Puerto Rico Laws Ann., Title 32 App. II, R.4.7.

The purpose of sections 1 and 2 of the Puerto Rico Rule 4 is to ascertain whether a non-resident defendant has sufficient contacts with the forum so as to justify subjecting him to this courts' jurisdiction. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Therefore, we must scrutinize the jurisdictional facts in the instant case to determine whether defendants had the necessary contacts with Puerto Rico, to comport with due process requirements. Consequently, if defendants have purposely availed themselves of the privileges and protections of a state's laws, and they ought reasonably to foresee that their activities may have possible consequences in that state that would force them to defend an action there, they will be amenable to *in personam* jurisdiction. *Worldwide Volkswagen Corp., supra.*

In *A.H. Thomas Co. v. Superior Court*, 98 PRR 864 (1970), the Supreme Court of Puerto Rico adopted a three-pronged test for determining whether *in personam* jurisdiction can be asserted over a non-resident defendant:

1. There must be an act done or consummated within the forum by the non-resident defendant. (Physical presence is not necessary; the act or transaction may be by mail.)

2. The cause of action must arise out of the defendant's action within the forum state.

3. The activity linking defendant, forum, and cause of action must be substantial enough to meet the due process requirement of "fair play and substantial justice." 98 PRR at 870.

■ The keystone of personal jurisdiction is that the cause of action against a non-resident must have resulted from the defendant's activity in the state. Plaintiffs have the burden of proving those facts necessary to sustain jurisdiction. See, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir. 1980). At this state plaintiffs must make out a *prima facie* showing of facts upon which jurisdiction is predicated in this Court.

■ Rule 4.7 of the Puerto Rico long-arm statute provides no basis for jurisdiction over defendants Henry Supplee and Benedict Harter, who were corporate officers of both BD and BDSA. Each worked and resided outside the Commonwealth of Puerto Rico. According to the record, their relationship with the forum resulted from the fact that they were officers of a Puerto Rico corporation. This alone is insufficient to establish jurisdiction over defendants. There must be an independent basis for asserting jurisdiction over corporate officer defendants besides the fact that there is jurisdiction over the corporation. See, *Escude Cruz v. Ortho, supra*, at 906.

In this case, Mr. Harter began working at BD in 1960 as Comptroller. Subsequently he became Vice-president of Finance and Treasurer, and later was Senior Vice-president for Administration. He was also Treasurer of the subsidiary companies. When the Juncos thermometer plant began operating in 1958, Mr. Harter travelled to Puerto Rico between five and ten times for banking and taxes purposes. There is no evidence in the record that reveals that these trips or any other dealings in Puerto Rico were causally related to the plaintiffs' injury.

As to Mr. Supplee, he was Assistant Secretary and also Vice-president for BD. Mr. Supplee was also Secretary of all the subsidiary companies and was General Counsel for BD. Mr. Supplee never travelled to Puerto Rico. In his affidavit and deposition he states that his functions in BD were purely ministerial. Nothing else in his testimony or affidavit suggests anything to the contrary.

Therefore, without such a causal nexus between the defendants' activities in Puerto Rico and the plaintiffs' claim, the defendants cannot be found to have "carried out business transactions within Puerto Rico" within the meaning of the long-arm statute. Rule 4.7(a)(1).

Plaintiffs have also failed to prove facts to establish jurisdiction over defendants Supplee and Harter under Rule 4.7(a)(2), the section of the long-arm statute concerning torts committed within the Commonwealth of Puerto Rico. In *Escude Cruz v. Ortho, supra,* the First Circuit held that officers of a Puerto Rican corporation were not subject to personal jurisdiction of Puerto Rico courts, absent showing that the officers had personal involvement with health or safety of employees, or that they undertook to maintain or inspect health and safety equipment. 619 F.2d at 907. In this case, plaintiffs have made no such showing. Affidavits filed by defendants state that they had no personal involvement with the health or safety of BDSA employees and that they did not undertake to maintain or inspect safety equipment, and that in case of any problems, those were handled by the local management. Here again the affidavits were not contradicted by the depositions of these defendants, and thus the affidavits must be taken as true. *Mangual v. General Battery Corp.,* 710 F.2d 15, 19 (1st Cir.1983). Consequently, we must conclude that defendants Harter and Supplee did not have a personal involvement in plaintiffs' injuries, and thus this Court lacks *in personam* jurisdiction over said defendants.

Nor have the plaintiffs proven sufficient facts to establish jurisdiction over defendants Dickinson, Becton, and Asnes. Defendant Farleigh S. Dickinson is a former Chairman of the Board of BD, where he was in charge of establishing standards for safety control. He served as a director of the BD subsidiaries until June, 1977, and only as an officer of the subsidiaries during the period of 1958 to September 30, 1963. However, the fact that Mr. Dickinson was never president or any other officer of any of the Puerto Rican subsidiaries after September 30, 1963, is indicative of Mr. Dickinson's lack of operational involvement with the Juncos plant. Also, Mr. Dickinson stated in his deposition and affidavit that there are various BD subsidiaries throughout the world and that the task of investigating and implication safety conditions is a job that belongs to local management of each plant.

As to defendants Henry P. Becton and Marvin Asnes, the complaint does not contain allegations as to any specific duty on their part to provide for safety conditions of the employees. Mr. Becton was an officer of BDSA until February 26, 1964, holding the position of Treasurer. He was a director of the subsidiaries until February, 1979, and he was not an officer of any other subsidiary.

As to Mr. Asnes, he testified at his deposition that at that time (1980) he was President of Becton Dickinson & Co. Previously he had also been President of the Laboratory, Service & Education Division. In December, 1972, he became sole Executive Vice-president of BD. He travelled to

Puerto Rico once on vacation in 1965–66, and again in 1973 or 1974, for a division presidents' meeting in Dorado, Puerto Rico. (Deposition, p. 25.) When a suit was filed in 1975 in relation to the mercury intoxication, he referred the matter to the Law Department. He disavowed any knowledge of any grievance related to mercury intoxication prior to that time.

He concluded his testimony by stating that no action was taken by BDSA, BD Thermometer, or their boards of directors in connection with the complaint filed in 1975. He also stated that he was not aware of the contents of a 1974 Commonwealth of Puerto Rico legislative report relating to mercury intoxication at the plant.

Plaintiffs have failed to indicate facts sufficient for this Court to assume jurisdiction over these defendants. *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022 (1st Cir.1979). These individual defendants' relationship to the forum resulted from the fact that they were officers or directors of corporations doing business in Puerto Rico. As mentioned before, this alone is insufficient to establish jurisdiction over said defendants. *Escude Cruz v. Ortho, supra; Mangual v. General Battery Corp., supra.*

Even though an officer of a corporation may be liable for torts in which he personally participated whether or not he was acting within the scope of his authority, plaintiffs also have failed to establish sufficient facts that safety conditions at the Juncos plant were of concern to these individual defendants.

However, the situation is different as to defendant Wesley Jackson Howe, and requires the analysis by this Court.

■ Wesley Jackson Howe is Chairman and Chief Executive officer of BD and has been since 1974. Since 1964 he has also been an officer of the subsidiaries which owned and operated the Juncos plant and since February, 1973, a director of these companies. Howe also made trips to Puer-

to Rico and controlled decisions affecting the Juncos plant.

For purposes of Rule 4.7(a)(2) the record shows an issue of fact as to Howe's possible involvement in decisions that might have caused plaintiffs' injuries. Howe's affidavit stated basically that he had no personal involvement with the plant, that he had no direct operational responsibilities, that his functions were administrative. In his deposition, Howe admitted that he did learn of a mercury vapor problem at the Juncos plant in 1966. Plaintiffs' exhibits shows that he received report about high mercury units at BDSA and written reports as to this problems at the Juncos plant. Because Howe was in charge of the general management of BDSA, together with the fact that he had knowledge of the mercury intoxication and was involved in the improvement of the Juncos plant facilities, suggests Howe's possible personal involvement with plaintiffs' injuries either because of his acts or failure to act. Consequently, plaintiffs have presented a *prima facie* tort in this case as defendant Howe. At this time we are not expressing any opinion as to Howe's liability. We only find that plaintiffs presented facts of Howe's tortious conduct in Puerto Rico to sustain jurisdiction under Rule 4.7(a)(1).

■ We come now to the question whether the Court has jurisdiction over BD. BD cannot be subject to this Court's jurisdiction because BD is the sole stockholder of the subsidiaries, plaintiffs' employer. *Escude Cruz v. Ortho, supra*, at 905. As to this issue, the case of *Mangual, supra*, 710 F.2d at 20–21, is controlling. From the evidence submitted in the case, it appears that individual defendants had dual roles as officers and directors of BD and the Puerto Rican subsidiaries. This fact alone does not establish that BD controlled BDSA.

■ We are of the opinion, however, that jurisdiction may be sustained over BD under Rule 4.7(a)(2). As already stated, plaintiffs have established facts of Howe's possible personal involvement in plaintiffs' injuries to support jurisdiction over him un-

**544**

der Rule 4.7(a)(2). Since Howe was an officer of BD and was acting in that capacity on behalf of BD in Puerto Rico, tortious acts may be the basis of jurisdiction over BD. See, *Mangual, supra,* at 21.

As to codefendant Hartford Insurance Company, the motion to dismiss will be denied, since Hartford may be responsible for the damages suffered by plaintiffs if its insureds are held liable, however, only subject to the provisions of the Direct Action Statute, 26 LPRA 2001 et seq.; *Ruiz Rodriguez v. Litton Industries Leasing Corp.,* 428 F.Supp. 1232 (D.P.R.1977), aff'd., 574 F.2d 44 (1st Cir.1978).

The motion to intervene by María L. Hernández at this late date is DENIED. The case is dismissed voluntarily as to codefendant Robert G. Butler, in accordance with Rule 41(a)(1) of the Federal Rules of Civil Procedure.

The motion to dismiss for want of *in personam* jurisdiction is hereby DENIED as to codefendants Wesley J. Howe, Becton Dickinson & Co., and Hartford Insurance Co.; and GRANTED as to Marvin Asnes, Henry Supplee, Benedict Harter, Farleigh S. Dickinson, and Henry P. Becton.

The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.