**Yahaira RODRIGUEZ SALGADO, et al., Plaintiffs,**

v.

**LES NOUVELLES ESTHETIQUES, et al., Defendants.**

**No. CIV. 01–1163(SEC).**

United States District Court, D. Puerto Rico.

Aug. 16, 2002.

**204**

José A. Hernández–Mayoral, San Juan, PR, for plaintiffs.

Allen M. Levine, Daniel L. Wallach, Becker & Poliakoff, PA, Ft. Lauderdale, FL, Edna E. Perez–Román, O'Neill & Borges, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendant Les Nouvelles Esthetiques's motion to dismiss the complaint for lack of personal jurisdiction (**Docket # 10**). Having reviewed the motion, Plaintiffs' opposition (**Docket # 16**) and Defendant's reply (**Docket # 19**), and after reviewing the case law cited by both parties, the Court has concluded that it lacks personal jurisdiction over Defendant.

Therefore, Defendant's motion will be **GRANTED** and the complaint against it will be **DISMISSED WITHOUT PREJUDICE.**

**Factual Background**

Plaintiff Yahaira Rodríguez Salgado is a citizen and resident of the Commonwealth of Puerto Rico. Her husband, Plaintiff Aníbal Agosto, is also a citizen and resident of Puerto Rico, and is a named Plaintiff in this action solely by virtue of the fact that he is the husband of Plaintiff Rodríguez Salgado. Defendant Les Nouvelles Esthetiques (LNE) is a Florida corporation with its principal place of business in Miami, Florida. LNE is the publisher of a monthly trade magazine catering exclusively to skin care professionals and "estheticians." LNE's magazine has a monthly circulation of approximately 20,000. Of this amount, approximately 20 subscribers—or about 0.1% of LNE's total worldwide circulation—are located in the Commonwealth of Puerto Rico. The magazine has a worldwide following and readership. It is not specifically directed or targeted to citizens or businesses in Puerto Rico. Moreover, LNE does not advertise its magazine in Puerto Rico, nor does it have any offices, places of business, employees, agents or representatives located in Puerto Rico. In addition to publishing a monthly magazine, LNE sponsors trade shows in Florida, California, Pennsylvania, and Canada for estheticians and other skin care professionals. LNE, however, has never sponsored or held a trade show in the Commonwealth of Puerto Rico.

Plaintiff Rodríguez Salgado is a professional esthetician who attended several of LNE's trade shows in Miami, Florida. Plaintiffs' claims in this action arise out of her attendance at one of these trade shows in Florida, and her participation in the making of a video at that show. The video depicts the demonstration by Defendant

Allain Ganancia of a new massage technique. Plaintiff Rodríguez Salgado is the model on the Video who is receiving the massage from Ganancia. The massage demonstration occurred in front of several thousand people in attendance at the show, and Rodríguez Salgado's image was projected to the audience through the use of video cameras.

LNE later began to advertise and sell the video through its monthly magazine, allegedly with Defendant Ganancia's consent. Since 1997, LNE has sold 37 copies of the video, but only two of these sales were made in the Commonwealth of Puerto Rico (one of which was to Plaintiff Aníbal Agosto). Plaintiffs claim that Rodríguez Salgado's constitutional privacy rights have been violated as a result of the production, distribution and marketing of the video by Defendants.

Nonetheless, as Defendant points out, the majority of the facts alleged in the complaint occurred in Florida. Furthermore, the jurisdictional allegations with respect to LNE pertain mostly to actions taking place or originating in Florida. In that regard, the Complaint alleges that LNE sold copies of the video at its recent trade show in Miami, Florida; and that it sells copies of the video through its magazine "Les Nouvelle Esthetiques American Edition," which is published in Miami, Florida. The only Puerto Rico contact alleged as to LNE is that it is selling the video here, through its magazine.

However, it appears from the record that only two copies of the video were sold by LNE in Puerto Rico, and one of the sales was made to Plaintiff Aníbal Agosto. Moreover, LNE's local video sales—totaling $50 over a four-year period—are very small when compared to LNE's overall revenues for the years in question. For example, in 1998 (when the first Puerto Rico sale occurred), LNE had total worldwide revenues of $1,940,494. Thus, the one copy of the video that LNE sold in Puerto Rico in 1998 amounted to a 0.00129% of LNE's total revenues for that year. There were no sales made to Puerto Rico in 1999. In the year 2000, when the second video was sold in Puerto Rico, LNE had total revenues of $2,032,276. In other words, the one video that LNE sold in Puerto Rico in 2000—to Plaintiff's husband—represented 0.00123% of LNE's total revenues for that year.

**Applicable Law and Analysis**

In order for a court to be able to make a binding decision which conforms with due process, the court must have personal jurisdiction over each party to the case. *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 35 (1st Cir.1999). The plaintiff always has the burden of establishing that the forum court has personal jurisdiction over the defendant. *Mass. Sch. of Law at Andover v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998); *Rodríguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir.1997). In ruling on this issue, the court has a number of different standards by which it may review the record to determine whether the plaintiff has met its burden. *See Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 674–78 (1st Cir.1992). When a court holds an evidentiary hearing on the issue, one of two standards applies: either plaintiff must demonstrate a likelihood of the existence of all facts necessary to establish personal jurisdiction or plaintiff must show by a preponderance of the evidence the facts which support personal jurisdiction. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145–47 (1st Cir.1995); *Mohajer v. Monique Fashions*, 945 F.Supp. 23, 26 (D.P.R.1996).

A third method often used at the early stages of litigation is the prima facie standard. *Rodríguez*, 115 F.3d at 83–84. Under this least taxing of the standards, a plaintiff must make a showing as to each

fact required to satisfy both the local forum's long-arm statute and the Constitution's due process clause. *Id.* The district court does not sit as a factfinder; rather, "it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Id.* at 84. To make a prima facie showing, the plaintiff may not rest on unsupported allegations in the pleadings; instead, it must adduce evidence of specific facts which establish personal jurisdiction. *Foster–Miller,* 46 F.3d at 145; *Boit,* 967 F.2d at 675. In the present case, no party has requested an evidentiary hearing and the litigation is in its early stages. Moreover, the First Circuit has ruled that unless the district court otherwise informs the parties, it is to be understood that the prima facie standard will be used. *See Rodriguez,* 115 F.3d at 84. Accordingly, the Court will employ the prima facie standard in ruling on the motion to dismiss.

There are two types of personal jurisdiction: general and specific. *Mass. Sch. of Law,* 142 F.3d at 34; *Pritzker v. Yari,* 42 F.3d 53, 59 (1st Cir.1994). General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in activity in the forum which is unrelated to the suit and which is systematic and continuous. *Foster–Miller,* 46 F.3d at 144 *citing United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992). In the case before the Court, Plaintiffs have conceded in their opposition to the motion to dismiss that they do not invoke general jurisdiction in this case. Therefore, the Court will move on to the question of whether there is specific jurisdiction in this case.

Specific jurisdiction requires a plaintiff to establish two conditions: first, that the forum has a long-arm statute which purports to grant jurisdiction over the defendant; and second, that the court's exercise

of personal jurisdiction over the defendant pursuant to that statute would comport with the Constitution's strictures. *Foster–Miller,* 46 F.3d at 144; *Pritzker,* 42 F.3d at 60. With regard to this first condition, the Puerto Rico long-arm statute provides in pertinent part that a court in Puerto Rico has jurisdiction over a person not domiciled in Puerto Rico if the action arises because that person "[t]ransacted business in Puerto Rico personally or through an agent" or he "[p]articipated in tortious acts within Puerto Rico." 32 P.R.Laws Ann. app. III, R. 4.7(a)(1) and (2). This statute has been interpreted to include as a "business transaction" the sending of mail to Puerto Rico from another jurisdiction, *see Dávila–Fermín v. Southeast Bank, N.A.,* 738 F.Supp. 45, 48 (D.P.R.1990), and to include as tortious conduct an act committed outside Puerto Rico but which could reasonably be expected to cause injury within it, *see Mangual v. Gen. Battery Corp.,* 710 F.2d 15, 19 (1st Cir.1983); *Rivera v. Bank One,* 145 F.R.D. 614, 620 (D.P.R.1993). This statute extends personal jurisdiction as far as the United States Constitution will permit. *Pritzker,* 42 F.3d at 60; *Dalmáu Rodríguez v. Hughes Aircraft Co.,* 781 F.2d 9, 12 (1st Cir.1986). When the state long-arm statute is coextensive with the Constitution's due process limits, the court's analysis may focus solely on the federal constitutional analysis. *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir.1995); *Dalmáu Rodríguez,* 781 F.2d at 12; *see also Phillips Exeter Academy v. Howard Phillips Fund,* 196 F.3d 284, 287 (1st Cir.1999) (Approving of district court's focusing on federal constitutional standards when state long-arm statute reached to full extent allowed under the Constitution). Accordingly, the first condition has been met.

The second condition—that the court's exercise of personal jurisdiction comports with constitutional strictures—requires substantially more analysis. A court mak-

ing a determination on this condition should use the following three-part test:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Pritzker*, 42 F.3d at 60–61 *citing 163 Pleasant Street*, 960 F.2d at 1089. This test of a defendant's minimum contacts is "highly idiosyncratic" and must be made on a case-by-case basis. *Id.* at 60. There must be an affirmative finding on each of the three parts of the test in order to support a finding that specific jurisdiction exists. *Phillips Exeter*, 196 F.3d at 288. Additionally, the court should apply this test individually to each of the plaintiff's claims. *Id.* at 289.

The first two parts of the test—relatedness and purposeful availment—are both aspects of demonstrating minimum contacts pursuant to *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 713 (1st Cir.1996). The relatedness test focuses on the nexus between the defendant's contact with the forum and the plaintiff's cause of action. *Id.* at 714; *Sawtelle*, 70 F.3d at 1389. This test ensures that the causation element is in the forefront of the court's due process analysis. *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir.1994). The court must determine whether plaintiff's claim arises out of or is related to the defendant's conduct within the forum state. *Swiss American*, 191 F.3d at 36. The claim may not arise out of the general relationship between plaintiff

and defendant; rather, the cause of action " 'must directly arise out of the specific contacts between the defendant and the forum state.' " *Phillips Exeter*, 196 F.3d at 290 *quoting Sawtelle*, 70 F.3d at 1389. For a tort claim, there should be a general showing that defendant's contacts with the forum were a proximate cause of plaintiff's claim. *Mass. Sch. of Law*, 142 F.3d at 35; *Nowak*, 94 F.3d at 715. In the case of a business relationship that leads to a tort, the absence of proximate cause will not necessarily mean that specific jurisdiction is lacking. *Nowak*, 94 F.3d at 715. When an out-of-state party engages in conduct targeted at an in-state resident to promote a business relationship between the two sides, specific jurisdiction may be proper if the out-of-state party's conduct leads to a tortious result. *Id.*

In the present case, Plaintiffs bring tort claims for violation of their privacy rights. Consequently, the Court's inquiry is whether Plaintiffs' claims arise from Defendant's contacts with the forum state. There are only two acts of Defendant that could arguably be said to have taken place in Puerto Rico, and that could be sufficiently related to this cause of action in a way which would meet this first part of the test for specific jurisdiction: 1) Defendant allegedly sold two copies of the video to residents of Puerto Rico through the mail, and 2) Defendant sold 20 subscriptions to its magazine in Puerto Rico, in which they advertised the sale of the video.

Defendant argues that LNE's sale of two videos in Puerto Rico—one of which was purchased by Plaintiff Aníbal Agosto—cannot logically be considered the legal or "proximate" cause of Plaintiffs' alleged injuries since they were not a substantial factor in the sequence of events that led to the claimed injury. *See Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 17 (1st Cir.2001) (defendant's actions will be considered the

"proximate cause" of the alleged harm only if it was "a substantial factor in bringing about the harm."); *Merritt v. Shuttle, Inc.,* 13 F.Supp.2d 371, 378 (E.D.N.Y.1998) (holding that television station was not subject to personal jurisdiction in · New York under that state's long-arm statute since "libel claim [did] not arise from defendant's delivery of mail orders to New York."). As alleged in the Complaint, the overwhelming majority of the events which give rise to Plaintiffs' causes of action occurred in Florida, since that is where Plaintiff Rodríguez Salgado was videotaped, and where said video was shown to the trade show audience. Indeed, Plaintiff emphasizes that the Florida videotaping was "unauthorized" and that she was not "paid" or otherwise compensated for her modeling services in Florida. Accordingly, since the gravamen of this part of the Complaint focuses on the alleged wrongful videotaping of Plaintiff in Florida, Plaintiffs' claims, as they relate to the invasion of privacy which may have occurred at the trade show, do not arise out of LNE's isolated Puerto Rico contacts. Therefore, any claims arising from the actual showing of the videotape in Florida would not meet the first part of the test, and must be dismissed.

On the other hand, the claims related to the damages caused by the distribution of the video in Puerto Rico are somewhat related to the contacts that Defendant had with the forum. The Court still believes that the causal connection is rather tenuous, however, even with respect to these damages. Had the videotaping not taken place, of course, no damages would have been sustained by Plaintiffs. But the videotaping happened outside the forum. So,

even though the sale of the videos in Puerto Rico is related to some of the damages allegedly sustained by Plaintiffs, a second and more important part of the cause of the alleged damages was the videotaping, which took place in Florida. It would seem, therefore, that both the videotaping and the sale are proximate causes of the alleged damages. The Court is uneasy about holding that having just one-half of the proximate cause of the damages happen in Puerto Rico is enough to satisfy this first part of the test. Nonetheless, let us assume, for the time being, that such a partial causal connection would be enough to satisfy the "relatedness" part of the test.

The second part of the test for specific jurisdiction is whether the defendant's in-state contacts constitute a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that forum's laws and making the defendant's involuntary presence before the courts there foreseeable. *Mass. Sch. of Law,* 142 F.3d at 36; *163 Pleasant Street,* 960 F.2d at 1089. The purposeful availment prong is meant to ensure that personal jurisdiction is not based only upon a defendant's random or isolated contacts with the forum. *Sawtelle,* 70 F.3d at 1391. The court's exercise of jurisdiction must be "fair, just, or reasonable." *Nowak,* 94 F.3d at 716 *citing Sawtelle,* 70 F.3d at 1391 *citing Rush v. Savchuk,* 444 U.S. 320, 329, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (internal quotations omitted). The Court should focus on voluntariness and foreseeability. *Nowak,* 94 F.3d at 716. The defendant's contacts with the forum should be voluntary and not based on the unilateral actions of a third party.[1] *Id.* Additionally,

---

1. Plaintiffs' allegation that the video was shown by "third parties" at a skin care convention in Puerto Rico is of no jurisdictional significance in assessing LNE's forum contacts. For "minimum contacts" to be sufficient for the exertion of personal jurisdiction over a nonresident defendant, they must be

the nature of these contacts must be such that the defendant could reasonably anticipate the possibility of being subject to a lawsuit there. *Id.* This foreseeability that a defendant might be haled into court exists when the defendant establishes a continuing obligation between itself and the forum state. *Sawtelle,* 70 F.3d at 1393.

In the present case, an evaluation of the nature and quality of LNE's Puerto Rico contacts leads to the inescapable conclusion that LNE did not purposefully direct its activities towards Puerto Rico or avail itself of the benefits and protection of Puerto Rico law. The only Puerto Rico contacts alleged as to LNE are that it is selling the video here, and that it has 20 Puerto Rico subscribers to its magazine. However, as the declaration under penalty of perjury of LNE's Chief Executive, Rodolphe Legrand, makes clear, only two copies of the video were sold by LNE in Puerto Rico, and one of the sales was made to Plaintiff Agosto. Moreover, those two sales generated a mere $50 in revenues for LNE, or about one-thousandth of one percent of LNE's total revenues for the period in question. LNE's local magazine subscriptions likewise constitute a tiny fraction of LNE's overall business. Out of a total circulation base of approximately 20,000 readers, there are only 20 subscribers located in Puerto Rico. Such infinitesimal sales-figures are not enough to constitute the requisite "minimum contacts" that could properly subject a nonresident defendant to personal jurisdiction in Puerto Rico, especially since the activities in question were not specifically directed or targeted to Puerto Rico citizens.

the result of a purposeful act by the defendant. *See Santini Rivera,* 118 F.Supp.2d at 163; *Reebok Int'l., Inc. v. Sebelen,* 930 F.Supp. 720, 726 (D.P.R.1996) ("A defendant's contact with the forum must result from the defendant's purposeful act."). Ac-

The First Circuit Court of Appeals has held that personal jurisdiction may not be exercised over a nonresident defendant in a defamation and/or invasion of privacy action where the allegedly offending material was not widely distributed within the forum. *See, e.g., Noonan v. Winston Co.,* 135 F.3d 85 (1st Cir.1998) (French advertising agency and French cigarette manufacturer lacked sufficient minimum contacts with Massachusetts where allegedly defamatory advertisement appeared in only 305 copies of magazine circulated in Massachusetts). *See also Chaiken v. VV Publishing Corp.,* 119 F.3d 1018 (2nd Cir. 1997) (Israeli newspaper publisher lacked sufficient minimum contacts with Massachusetts to subject it to jurisdiction in libel action where it distributed only four copies of the allegedly defamatory article in Massachusetts, which amounted to only .0004% of the paper's total circulation); *Schnapp v. McBride,* 64 F.Supp.2d 608, 610–11 (D.La.1998) (Wisconsin newspaper publisher lacked sufficient minimum contacts with Louisiana where it distributed only 19 copies of its newspaper in Louisiana and the allegedly defamatory article was not "calculated to cause injury" to the plaintiff in Louisiana); *Scherr v. Abrahams,* 1998 WL 299678, at *34 (N.D.Ill. May 29, 1998) (Massachusetts magazine publisher sued for trademark infringement lacked sufficient minimum contacts with Illinois where it had less than 60 bi-monthly subscribers in Illinois and made even fewer newsstand sales in Illinois, totaling approximately 3% of the magazine's total nationwide distribution). Compare, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 773–74, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (magazine

cordingly, the alleged showing of the Video in Puerto Rico by the unnamed "third party" is not to be considered in assessing LNE's forum contacts for purposes of the "minimum contacts" analysis.

publisher subject to jurisdiction based on monthly circulation of 10,000 to 15,000 copies within forum state; Court ruled that "monthly sales of thousands of magazines" could not be characterized as "random, isolated, or fortuitous" and therefore provided sufficient minimum contacts); *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (editor of allegedly defamatory magazine article subject to jurisdiction in California based on weekly circulation of 600,000 copies in California).

The relationship between the size of the distribution within the forum and its impact on the "minimum contacts" calculus is best exemplified by the First Circuit's decision in *Noonan,* where the Court observed that "[j]ust as widespread circulation indicates deliberate action, thin distribution may indicate a lack of purposeful contact." *Noonan,* 135 F.3d at 91. In *Noonan,* the First Circuit affirmed the dismissal of an action for defamation, misappropriation, violation of the right of publicity, and invasion of privacy based on a French advertising agency and French cigarette manufacturer's alleged unauthorized use of the photograph of a Massachusetts resident, a devoted non-smoker and police officer, in numerous magazines. Emphasizing the fact that the defamatory advertisement appeared in only 305 copies of magazines circulated in Massachusetts, the First Circuit held that there were insufficient minimum contacts to exercise personal jurisdiction over the French corporate defendants:

> [P]laintiffs' claims rest on an advertisement that appeared in 305 individual magazines, circulated in Massachusetts. This small distribution, by itself, does not merit a finding that Massachusetts was the focal point of the events in question, or that [defendants] aimed the advertisements toward Massachusetts. The size of a distribution of offending material helps determine whether a de-

fendant acted intentionally. The Supreme Court has held that a publisher's regular circulation of a large number of magazines containing allegedly libelous content in a forum state indicated deliberate and continuous exploitation of a market and, therefore, was sufficient to support jurisdiction. *See Keeton,* [465 U.S. at 781, 104 S.Ct. 1473]. Just as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact. [citation omitted].... While we sympathize with [plaintiff's] distress at seeing his image used to promote a product he despises, his Massachusetts-based injury is not enough to support jurisdiction over the defendants. To find otherwise would inappropriately credit random, isolated, or fortuitous contacts and negate the reason for the purposeful availment requirement.

*Noonan,* 135 F.3d at 91.

Plaintiffs fail to distinguish *Noonan* in their opposition to the motion to dismiss. Nonetheless, the Court must recognize that the situation in that case was different from the one at bar in one significant respect, the defendant publisher in *Noonan* claimed to have no knowledge of the sale of its publications in the forum. In spite of this, the other First Circuit cases analyzing this issue, along with other cases cited by Defendant, convince the Court that such a difference is not dispositive. For example, the First Circuit in *Swiss American Bank,* 274 F.3d at 623, explained that the holding in *Calder* " 'cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.' " *Id. quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1087 (9th Cir.2000). So, the fact that Defendant did know, in the case before us, that it sold two videos in Puerto Rico does not necessarily mean that the

holding in *Noonan* is not applicable to the case at bar. *Noonan* stands for the broader proposition in *Keeton* that for the establishment of specific jurisdiction in these types of cases it is required that "a substantial number of copies [be] regularly sold and distributed." *Keeton*, 465 U.S. at 781, 104 S.Ct. 1473.

Accordingly, in *Chaiken*, the Second Circuit held that the District Court of Massachusetts did not have personal jurisdiction over an Israeli newspaper publisher in a libel action because of the insignificant number of copies of the offending newspaper that it had sold in Massachusetts:

> In recommending that the claims against [the Israeli newspaper publisher] be dismissed, the magistrate judge emphasized that only four copies— 0.004% of its total circulation—of the newspaper containing [the allegedly defamatory] article arrived in Massachusetts. Given [defendant's] "tiny circulation" in Massachusetts and the absence of other significant contacts, the magistrate judge believed that exercising jurisdiction over [defendant] would violate the due process clause. The district court accepted this reasoning, noting that even the Massachusetts distribution of the [defendant's] Sunday edition (183 copies) would not create sufficient contacts to satisfy the due process clause. We agree with the district court that [defendant's] contacts with Massachusetts were minimal . . .

*Chaiken*, 119 F.3d at 1020. In that case, which is virtually indistinguishable from the case at bar, the Court cited *Keeton* in stating that it doubted that "four copies per day, or even the 183 copies of the Sunday edition, constitute the 'substantial number of copies' that makes it fair to exercise jurisdiction over a non-resident publisher." *Id.* at 1029, *quoting Keeton* 465 U.S. at 781, 104 S.Ct. 1473.

LNE's sparse contacts with Puerto Rico are more comparable to the contacts in *Noonan* and *Chaiken* than they are to the contacts in *Keeton* and *Calder*. As previously noted, fewer than 20 copies of LNE's magazine enter Puerto Rico by subscription every month, and only two copies of the allegedly offending video were sold in Puerto Rico (one of which was sold to Plaintiff Agosto). LNE's Puerto Rico sales are even more insubstantial when compared to the 10,000 to 15,000 monthly copies distributed in *Keeton* and the 600,-000 weekly copies distributed in *Calder*. Moreover, unlike the defendants in *Calder*, whose national magazine was published in California more than in any other forum, *see Calder*, 465 U.S. at 788–89, 104 S.Ct. 1482, LNE's Puerto Rico sales pale in comparison to its sales in the United States and other jurisdictions. Under these circumstances, it cannot be said that LNE's act of mailing the video to a single customer (other than Plaintiff) in Puerto Rico is pervasive enough forum contact such that LNE should have reasonably anticipated being haled into a Puerto Rico court.

Plaintiffs also allege, without offering any proof, that the lone Puerto Rico sale resulted from advertising contained in LNE's monthly magazine. Such an allegation is insufficient to confer specific personal jurisdiction over LNE. "[G]eneral advertising alone will not suffice to confer jurisdiction, even if it leads to a single sale." *Digital Equipment Corp. v. Alta-Vista Technology, Inc.*, 960 F.Supp. 456, 466 n. 19 (D.Mass.1997). By way of example, the *Digital Equipment* court cited with approval *Droukas v. Divers Training Academy, Inc.*, 375 Mass. 149, 376 N.E.2d 548 (1978), in which a publication advertising marine engines was distributed in Massachusetts, resulting in a single sale to a Massachusetts resident. In dismissing the case for lack of personal jurisdiction,

the *Droukas* court noted that it "view[ed] the sale of the engines to the defendant ... as an isolated transaction, with slight effect on the commerce of the Commonwealth." *Droukas*, 375 Mass. at 154, 376 N.E.2d 548. "The addition of advertising which reached into the Commonwealth, although a 'but for' cause of the sale, was not sufficient to change the equation." *Digital Equipment*, 960 F.Supp. at 466.

There is no evidence of LNE purposefully targeting the Puerto Rico forum in the placement of advertisements for the subject video. As explained in LNE's initial motion, LNE's monthly magazine is one of general circulation, with a worldwide following and readership. The magazine is not advertised in Puerto Rico, nor is it specifically directed or targeted to citizens of Puerto Rico. Therefore, the mere fact that LNE's magazine may have contained an advertisement for the sale of the subject videotape is insufficient to confer jurisdiction over LNE, since it did not specifically target Puerto Rico citizens, and resulted in only two (arguably only one) sales.

Accordingly, under these facts, LNE did not "purposefully avail" itself of the privilege of conducting activities in the Puerto Rico forum, and, thus, it lacks the requisite "minimum contacts" with Puerto Rico to be subject to personal jurisdiction here. Having established that the second part of the test for specific jurisdiction is not met, we need not go into the third part of the test, related to the Gestalt factors. Similarly, having determined that the Court has no personal jurisdiction over Defendant, it is not necessary to analyze Defendant's arguments regarding venue.

**Conclusion**

For all the reasons discussed above, Defendant's motion is **GRANTED,** and the complaint against it will be **DISMISSED WITHOUT PREJUDICE.**

Plaintiffs' claims against Defendant Allain Ganancia are still pending before the Court. The complaint in this case was filed on February 7, 2001. Pursuant to Fed.R.Civ.P. 4(m), the time to serve process upon Defendants was to expire on June 7, 2001. As provided by Fed. R.Civ.P. 4(m) the Court gave notice to Plaintiffs on May 22, 2001 that it intended to dismiss the case against Defendants if proof of service was not timely filed by said date (**Docket # 2**). Any further requests for an extension of time to serve process should have been timely filed before the expiration of said term, showing good cause why it should be granted. Plaintiffs, however, failed to serve process upon Defendant Allain Ganancia or request a further extension to do so. In fact, the summons issued for Defendant Ganancia was returned **unexecuted** on June 7, 2001 (**Docket # 3**). Therefore, pursuant to this Court's Order, and Fed. R.Civ.P. 4(m), the complaint against Defendant Allain Ganancia will also be **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**