**BANCO POPULAR de PUERTO RICO, Plaintiff,**

v.

**David GREENBLATT, Michael Greenblatt, Roy Greenblatt, John W. Hurley, Joseph Kantrowitz, Joseph Nurnberg, Eric Weil, individually and as officers and directors of Amfesco Industries, Inc. and subsidiaries, Brout & Company, a partnership, Vincent Alloca, Allen B. Bachenheimer, Alan P. Brout, Jacob Feinberg, Steven W. Glantz, Kenneth A. Hirsh, Hirsch Jacobson, Harvey I. Jurist, Oscar R. Kunreuther, Warner J. Lowey, Stanley Mason, Lawrence R. Peltz, Richard W. Roedel, Steven R. Rosenshein, Herbert L. Tarr, Emanuel D. Tonelson, Joel S. Weinstein, and John Does I–V, individually and as members of Brout & Co., Defendants.**

Civ. No. 87–1321(JP).

United States District Court,
D. Puerto Rico.

Aug. 4, 1988.

Caplin & Drysdale, Chartered, New York City, Gino Negretti Lavergne, San Juan, P.R., for Banco Popular de Puerto Rico.

Pedro J. Santa–Sánchez, O'Neill & Borges, Hato Rey, P.R., for codefendants David, Michael and Roy Greenblatt; John W. Hurley, Joseph Kantrowitz, Joseph Nurnberg, and Eric Weil (the "Officers and Directors").

Jaime Sifre, Sánchez–Betances & Sifre, Hato Rey, P.R., Summit Rovins & Feldesman, New York City, for codefendants Brout & Company, Vincent Alloca, Allen B. Bachenheimer, Alan P. Brout, Jacob Feinberg, Steven W. Glantz, Kenneth A. Hirsh, Hirsch Jacobson, Harvey I. Jurist, Oscar R. Kunreuther, Warner J. Lowey, Stanley Mason, Lawrence R. Peltz, Richard W. Roedel, Steven R. Rosenshein, Herbert L. Tarr, Emanuel D. Tonelson and Joel S. Weinstein.

## OPINION AND ORDER

PIERAS, District Judge.

Banco Popular has brought this case against several officers and directors of Amfesco Industries, Inc., a New York corporation, and against Brout & Co., a New York partnership and several of its members. Banco Popular claims that both the Amfesco defendants and the Brout defendants made significant misrepresentations regarding the business operations of Amfesco which induced the bank to extend over $8 million in loans and credit. Banco Popular now deems those sums to be uncol-

lectable, and it has sued the defendants for its consequent damages. Jurisdiction is predicated on 28 U.S.C. § 1332: Banco Popular is a Puerto Rican corporation, and all the defendants are citizens of states other than Puerto Rico. The matter is now before the Court on motions to dismiss and to transfer by both defendants. For reasons that follow, the motions are, for the most part, DENIED.

## I. Jurisdiction Over the Non-resident Defendants

Both groups of defendants have moved for dismissal for lack of jurisdiction over the person. Fed.R.Civ.P. 12(b)(2). To sustain the action over this challenge, the plaintiffs must establish facts sufficient to support application of the long-arm statute of Puerto Rico, 32 L.P.R.A. App. III Rule 4.7, and to show that the exercise of jurisdiction over the non-resident defendants is permissible under the due process clause. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir.1980).

Rule 4.7 provides for jurisdiction over the defendants if the litigation arises because of business transactions in Puerto Rico or tortious acts committed in Puerto Rico.[1] Exercise of jurisdiction over these defendants must also pass constitutional muster, i.e., the Amfesco and Brout defendants must have purposefully established such "minimum contacts" with Puerto Rico that litigation in this forum would not violate their right to due process of law under the fourteenth amendment. *Burger King*, 471 U.S. 462, 105 S.Ct. 2174. In this case, Banco Popular must demonstrate that the defendants have purposefully availed themselves of the privileges and protection of

Puerto Rico's laws such that they should reasonably anticipate being haled into Court in Puerto Rico.

The relationship between the long-arm statute and the due process clause is not entirely clear. The First Circuit has unequivocally given Rule 4.7 the full reach permitted by the Constitution. *Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983); *Com. of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 659 (1st Cir.1980). *See Young v. Pannell Fitzpatrick & Co.*, 641 F.Supp. 581, 585 (D.Puerto Rico 1986). The Supreme Court of Puerto Rico, on the other hand, has explicitly disagreed with the Court of Appeals' interpretation of the Puerto Rican Rule. In a decision subsequent to any thus far cited by the First Circuit, the Supreme Court noted that "an affirmative act which, from a constitutional point of view, represents a minimum contact between a nonresident and our jurisdiction is not per se sufficient to authorize our courts to exercise their jurisdiction if said action cannot be framed within any of the circumstances described in Rule 4.7 ..." *Industrial Siderúrgica, Inc. v. Thyssen Steel Caribbean, Inc.*, official translation, slip op. at 721–722, n. 5 (June 30, 1983).[2] Thus a conflict arises between the precedent that binds this Court and the law we are expected to follow. Fortunately the dilemma need only tease academic interests because the facts of this case satisfy any additional constraints that might be imposed by Rule 4.7.

### A. The Amfesco Defendants

The plaintiff alleges that the Amfesco defendants have transacted business in Puerto Rico and have made fraudulent or negligent misrepresentations with relation to that business. Each of the Amfesco

---

**1.** 4.7 *Service on a person not domiciled in Puerto Rico*
(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:
(1) Transacted business in Puerto Rico personally or through an agent; or
(2) Participated in tortious acts within Puerto Rico personally or through his agent; or ...

32 L.P.R.A. App. III Rule 4.7.

**2.** Although this decision was rendered in 1983, the official translation is yet to be published. There is therefore no surprise in the First Circuit's reliance only on earlier cases such as *A.H. Thomas Co. v. Superior Court*, 98 D.R.R. 864 (1970). *See Mangual*, 710 F.2d at 19; *Vencedor Mfg. Co., Inc. v. Gougler Industries*, 557 F.2d 886, 889 (1st Cir.1977).

defendants is an officer of Amfesco, which is a New York corporation. Amfesco's executive offices and principal place of business are located in Plainview, New York. Amfesco operates three manufacturing operations in Puerto Rico through two wholly owned subsidiaries, Amjet Industries, Inc., and AFS Sportshoes, Inc. According to Amfesco's 1984 Annual report, the Puerto Rico facilities generated approximately $47 million in sales in 1984, $39 million in 1983, and $36 million in 1982. These totals accounted for slightly over half of Amfesco's total sales for those years. Under tax-exemption grants granted by Puerto Rico, Amfesco received over $12 million in tax benefits in 1982–84. According to a supplemental affidavit filed by defendant Joseph Nurnberg, secretary and general counsel of Amfesco, no officers or directors were ever formally appointed for either of the two Puerto Rican subsidiaries, Amjet and AFS. Nurnberg states that defendant David Greenblatt, defendant Michael Greenblatt, and Nurnberg acted as the de facto officers or directors for Amjet and AFS.

Amfesco has conducted business with Banco Popular since 1968. In 1978, Banco Popular extended a line of credit to a New York-based subsidiary of Amfesco's that had operations in Puerto Rico. Héctor Ledesma, vice-chairman and director of Banco Popular, states that Amfesco's "credit facilities with the Bank totaled $6 million" by November, 1980. In 1982, for reasons that are disputed but immaterial, Amfesco paid its indebtedness in full and ceased its borrowing relationship with Banco Popular. Amfesco retained other business with the bank, including an investment account and deposit accounts.

In late 1983 or early 1984, Banco Popular and Amfesco negotiated the reestablishment of a line of credit. Most, if not all, of the negotiations took place in New York between representatives of Amfesco and the New York branch office of Banco Popular. The parties have submitted conflicting affidavits with respect to the occurrence of any discussions or other events related to the renewed lending relationship that had any contact with Puerto Rico.

Only Joseph Kantrowitz, senior vice-president/finance for Amfesco, admits to as much as a telephone call with any representative of the bank in Puerto Rico, and Kantrowitz alleges that this was a telephone call from Mr. Héctor Baez to New York.

In late 1983 or early 1984, Banco Popular approved a $6 million line of credit. This loan was approved in Puerto Rico by the Director's Credit Committee of Banco Popular, and it was ratified by the bank's board of directors in Puerto Rico. The loan was administered in New York, and the Amfesco defendants claim to have had no knowledge that any action with respect to the loan would occur in Banco Popular's Puerto Rico offices. In July, 1984, Amfesco drew on the line of credit for a $2.5-million advance and for letters of credit. In November, 1984, Amfesco received a $500,000 advance, and Banco Popular increased the line of credit to $10 million. From January to August, 1985, Amfesco received $5.7 million in loans and credits. By mid-August, 1985, Amfesco's indebtedness to Banco Popular stood at about $9.5 million. In all these transactions, Amfesco dealt exclusively with Banco Popular personnel in New York.

The defendants argue that the long-arm statute, as well as the due process clause, requires minimum contacts with respect to the cause of action; therefore only Amfesco's actions to obtain the post–1983 loans are relevant in the Court's minimum contacts analysis. Because the Amfesco defendants had virtually no contacts with Puerto Rico regarding these loans, and they had no reason to know that any part of the transactions occurred anywhere but in New York, the defendants claim that they transacted no business in Puerto Rico related to the cause of action. The defendants claim, moreover, that these facts show that they committed no tort in Puerto Rico.

 Both the federal constitution and the Puerto Rico long-arm statute require more than the mere existence of contacts with Puerto Rico; they require a relationship between the contacts and the litiga-

tion. The federal standard is satisfied if the plaintiff shows that "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, *quoting Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). We find that Banco Popular's alleged injuries clearly "relate to" the Amfesco defendants' activities within Puerto Rico. Although their physical contacts with Puerto Rico appear to have been minimal, the defendants have availed themselves of the laws and benefits of Puerto Rico to an extent that they should reasonably be expected to defend themselves in litigation related to Amfesco's operations on the island. The defendants have received great benefits from Puerto Rico, including significant tax credits to Amfesco. The defendants conducted significant business with Banco Popular in Puerto Rico in the past, and that business can hardly be viewed as irrelevant to the more recent relationship with Banco Popular. The Court views the renewed lending relationship as integrally related to Amfesco's significant business in Puerto Rico, and its long-standing borrowing relationship with Banco Popular. Despite the apparent locus of this particular transaction in New York, we find nothing unreasonable in requiring the Amfesco defendants to appear in Puerto Rico.

■ The plaintiffs allege that their claim arises under two of Rule 4.7's predicate "circumstances:" 1) arising because of business transactions in Puerto Rico, and 2) arising because of participation in tortious acts within Puerto Rico. The defendants appear to argue that Rule 4.7's "arising because of" language requires a closer relationship between the business transactions and the litigation than the Supreme Court's "arising out of or related to" language requires. Whether this argument has any legal weight or not, the Court finds that the present cause of action "arises because of" the Amfesco defendants' business transactions in Puerto Rico, consistent with Rule 4.7(a)(1). The facts recited in our discussion of minimum contacts, above, fully support the conclusion

that the controversy over the loans and line of credit arose because the Amfesco defendants transacted business in Puerto Rico.

■ In addition, it appears that some of the defendant's alleged activities could constitute tortious acts, within the meaning of Rule 4.7(a)(2). In *Mangual,* the First Circuit endorsed the exercise of jurisdiction under Rule 4.7(a)(2) over the non-resident president of a Puerto Rican company because he earned his livelihood, in part, from the corporation's activities in Puerto Rico; he made trips to Puerto Rico; he controlled decisions affecting a Puerto Rican plant; and he had "possible involvement in matters that might have caused the plaintiff's injury." *Mangual,* 710 F.2d at 20. The primary inquiry at this stage of the lititgation is whether the complaint and the affidavits comprise sufficient facts connecting the defendant's acts, within or without Puerto Rico, to injury in Puerto Rico. *Mangual,* 710 F.2d at 19, 20 n. 5. *See also Escude Cruz,* 619 F.2d at 907. The amended complaint alleges that each Amfesco defendant personally participated in making, supervising, reviewing, and approving false financial reports that were relied on in Puerto Rico to the detriment of Banco Popular. Although all the Amfesco defendants have submitted affidavits in opposition to jurisdiction, none have denied any involvement in the alleged tortious acts— they simply contest their contacts with Puerto Rico. *See* Affidavits of Michael Greenblatt, David Greenblatt, Joseph Nurnberg, Ron Harley, Roy Greenblatt, Eric Weil, and Joseph Kantrowitz. While it is true that the only actions taken by these defendants were accomplished in New York, *Mangual* and *Escude Cruz* make it quite clear that jurisdiction may attach under Rule 4.7(a)(2) for acts taken in New York with injurious effects in Puerto Rico. Therefore, the Court finds that Rule 4.7(a)(2) offers an alternative basis for long-arm jurisdiction over the Amfesco defendants.

### B. The Brout Defendants

The jurisdictional aspect of the case against the Brout defendants is only slight-

ly different. The plaintiff alleges that the Brout defendants have transacted business in Puerto Rico and have, like the Amfesco defendants, made fraudulent representations with relation to that business. The plaintiff makes these allegations against Brout & Co., a partnership organized under the laws of New York, with a principal place of business in New York; Vincent Alloca, a member of Brout & Co.; Alan P. Brout, a member of Brout & Co.; and five John Doe defendants who were members of Brout & Co.

Brout & Co. served as auditor for Amfesco beginning around 1922. Brout & Co. performed its services for Amfesco in 1983, 1984, and 1985 pursuant to agreements made in New York between Amfesco and Brout & Co. Most of Brout & Co.'s services were performed in New York. The company did participate in the inventories of the Amfesco facilities taken in Puerto Rico for the fiscal years ending in 1983, 1984, and 1985. As auditors, the Brout defendants did not actually count Amfesco's inventory; rather, they attempted to determine the effectiveness of Amfesco's methods of taking inventory. They accomplished the goal through observation and test-counting. The Brout defendants claim that the time spent in Puerto Rico was a minimal fraction of the time required for their audits.

On October 17, 1985, defendant Alloca attended a meeting with some of the Amfesco defendants and representatives of the plaintiff at Amfesco's corporate offices in Plainview, New York. The plaintiff alleges that Amfesco's fiscal-year 1985 losses were substantially understated in that meeting. On November 14, 1985, defendants Alloca and Brout met with representatives of Banco Popular in New York. None of the Brout defendants have had any other contacts with Puerto Rico.

The plaintiffs claim that these activities by the Brout defendants satisfy both the "transacting business" and "tortious acts" requirements of Rule 4.7(a). Although the acts complained of, making false statements, occurred exclusively in New York, they were enabled, in part, by the inventory activities in Puerto Rico. The Court therefore finds that the purposeful physical entry into Puerto Rico to conduct business related to Amfesco constitutes sufficient contacts with the forum to satisfy both the Puerto Rican statute and the due process clause.

The Brout defendants admit that they were physically present for a number of days each year they oversaw Amfesco's inventory. They argue that the time spent in Puerto Rico was minimal when compared to the time they spent working on the Amfesco account in New York; but the comparison is not relevant to the Court's analysis of Brout & Co.'s contacts. The Court considers the contacts with Puerto Rico without regard to what the defendants did in New York. The Court finds that the Brout defendants' purposeful entry into the jurisdiction to observe Amfesco's inventory for at least three consecutive years constituted the transaction of business in Puerto Rico. The Court further finds that the present litigation arises, at least in part, from the Brout defendant's activities in Puerto Rico. The plaintiff alleges that the improper inventory procedures were integrally related to the misstatements that the plaintiff eventually relied upon. Although this relationship is slightly attenuated, the Court finds that it satisfies Rule 4.7(a)(1)'s requirement that the claim arises from the transaction of business in Puerto Rico.

The Court also concludes that the plaintiff has adequately alleged the commission of tortious acts by the Brout defendants within the meaning of Rule 4.7(a)(2). The amended complaint alleges that each Brout defendant was responsible for supervising and conducting the annual audits of Amfesco, certifying the results of the audits, and reviewing and issuing Amfesco's quarterly interim financial statements and other financial statements. It further alleges that a principal purpose of these activities was to induce Banco Popular to extend credit to Amfesco; that the statements were false, misleading, and incomplete; and that Banco Popular suffered injuries as a result of their reliance upon the statements. The

Brout defendants do not deny their involvement nor Banco Popular's injuries. Rather, they primarily claim that their activities did not occur to any significant extent in Puerto Rico. The Court is therefore satisfied that jurisdiction is proper under Rule 4.7(a)(2) pursuant to *Mangual,* 710 F.2d 15.

Finally, the Court finds that subjecting the Brout defendants to jurisdiction under Rule 4.7 comports with any and all due process concerns. The fact that the defendants physically entered Puerto Rico several times to conduct their business indicates a purposeful availment of the island's benefits and laws. The Court finds nothing unfair or unjust in requiring persons who have come to Puerto Rico for business reasons—and profit motives—to defend their actions in this forum.

The motions to dismiss for want of personal jurisdiction are therefore DENIED.

## II. *Change of Venue*

As an alternative to dismissing the amended complaint for lack of personal jurisdiction, both groups of defendants move for transfer of the case to New York under 28 U.S.C. § 1404(a). Section 1404 permits this Court, in its discretion, to transfer the case to another district where the case might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The purpose of the provision is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964), *quoting Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26–7, 80 S.Ct. 1470, 1474–5, 4 L.Ed.2d 1540 (1960).

The defendants argue that the following factors justify transfer to either the Southern District of New York or the Eastern District of New York:

—Nearly all the defendants' witnesses and some of the plaintiff's witnesses reside and work in New York;

—Most of the defendants are located in New York;

—All the defendants' documentary evidence and some of the plaintiff's documentary evidence is in New York;

—The loan transactions were negotiated and executed in New York;

—Related litigation is pending in New York—*Flynn v. Greenblatt,* No. 86–2457(RJD), a shareholder's derivative action;

—The center of gravity of the Brout defendants' activities is New York;

—The action will be governed by the laws of New York because of that state's dominant contacts;

—And the litigation would impose fewer burdens upon the federal courts if conducted in New York.

The plaintiff argues that the following factors justify venue in the District Puerto Rico:

—The plaintiff, a citizen of Puerto Rico, chooses Puerto Rico as its forum;

—The cause of action arguably arose in Puerto Rico, so venue in New York is not clearly proper;

—The most important documents in plaintiff's case are located in Puerto Rico;

—The plaintiff's principal witnesses reside in Puerto Rico;

—Some Amfesco witnesses reside in Puerto Rico;

—The pending New York case *Flynn v. Greenblatt* is not one that can be consolidated with the present case.

—Puerto Rican choice-of-law rules govern the case, and the District Court of Puerto Rico is better equipped to determine which law governs the case;

—The action will, in fact, be governed by the laws of Puerto Rico.

Clearly there is inconvenience for both groups of defendants in litigation in Puerto Rico. The Court finds these difficulties to be insufficient, however, to justify transferring the burden of foreign-district litigation to the plaintiff. The plaintiff is a resident of this district and would suffer a

measure of inconvenience litigating elsewhere. The Court need not at this time determine which state's substantive law will apply, but it is apparent that Puerto Rican choice-of-law rules will be used to make that decision. There is no concern for forum shopping, and defendants have failed to indicate how other interests of justice would be served by transfer.

The Court therefore finds that the interests of justice would not be served by a transfer, and the defendants' motions to transfer are DENIED.

### III. *The Particularity of Plaintiff's Pleading of Fraud*

Both groups of defendants have filed motions to dismiss the complaint for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b).[3] The primary purpose of this rule is to "apprise the defendant of fraudulent claims and of the acts that form the basis for the claim." *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985). To that end, the First Circuit has interpreted Rule 9(b) to require specification of the time, place, and content of the false representations. *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980).

The defendants argue that the complaint is deficient, among other reasons, because "Banco Popular has not specified the time of any of the false representations except those allegedly made at two meetings in 1985. (Amended Complaint, Paragraphs 52, 54). Even then Banco Popular does not tell us where those meetings occurred or where any of the other allegedly false representations were made. Nor does it even disclose with specificity what was said and how each statement was false ... Banco Popular fails to specify which particular statement in which particular document was false or indicate why that statement was false."

▮ The defendants thus ask the Court to require a high degree of specificity in the complaint. To hold the plaintiffs to this type of standard, however, would be to require them to engage in a sort of factual pleading not contemplated by Rule 9(b). The plaintiff has specified numerous publicly disseminated documents (including 1983, 1984, and 1985 interim quarterly financial statements) that are alleged to contain specified misstatements. *See* Amended Complaint, ¶ 61. The plaintiff has also specified the dates and contents of certain oral misstatements. *See* Amended Complaint, ¶¶ 52, 55. The amended complaint also indicates each defendant's role in the alleged wrongdoing: the Amfesco defendants are alleged to have had responsibility for the misstatements in the specified documents (*see, e.g.*, ¶¶ 35, 48, 51, 60, 61) and to have made specified oral misstatements concerning Amfesco's profitability (*see, e.g.*, ¶ 52); and the Brout defendants are alleged to have made false representations as to the accuracy of the same specified documents (see ¶¶ 79, 80). In addition, the complaint specifies how and when Banco Popular relied on the defendants' representations, to its detriment.

The Court concludes, in light of the foregoing, that the plaintiff has set forth the circumstances of the alleged fraudulent acts in sufficient detail to give the defendants adequate notice and to enable them to prepare a responsive pleading. *See* 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1298 at 415 (1969). Therefore, the motion to dismiss the complaint for failure to meet the requirements of Rule 9(b) is DENIED.

### IV. *Negligent Misrepresentation*

The Brout defendants have also moved for the dismissal of Count VII which alleges negligent misrepresentation by the Brout defendants. The basis of the motion is that New York law does not permit a claim by a non-privy party against an accountant for mere negligence, *citing Ultramares Corp. v. Touche*, 255 N.Y. 170, 174

---

**3.** (b) *Fraud, Mistake, Condition of the Mind.* In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
Fed.R.Civ.P. 9(b).

N.E. 441 (1931). In Part I, above, the Court expressly refrained from determining which state's substantive law will govern this litigation. The choice of law should not be made without further discovery and the benefit of the parties' focused argumentation on that issue. Dismissal pursuant to New York substantive law is therefore premature, and the Court reserves decision on the motion.

### V. *Further Schedule*

Because the motions to dismiss and for transfer are denied, the case shall proceed before this Court. The Clerk shall issue a call to an Initial Scheduling Conference on September 16, 1988, at 10:00 a.m. The parties are expected to comply fully with the requisites of an Initial Scheduling Conference.

The Clerk shall act accordingly.

IT IS SO ORDERED.