### GENERADORA DE ELECTRICIDAD DEL CARIBE, et al., Plaintiffs,

v.

### FOSTER WHEELER CORPORATION, et al., Defendants.

No. Civ. 94–1405 (DRD).

United States District Court, D. Puerto Rico.

Nov. 30, 1998.

Andres Guillemard–Noble, Nachman, Guillemard & Rebollo, Santurce, PR, Juan H. Saavedra–Castro, San Juan, PR, Harold D. Vicente–Gonzalez, Vicente & Cuevas, Santurce, PR, for plaintiffs.

Pedro Jimenez–Rodriguez, Gonzalez Oliver, Correa Calzada, Collazo Salazar, Herrero & Jimenez, San Juan, PR, Frederick B. Lacey, LeBoeuf, Lamb, Greene & McRae, Newark, NJ, Lawrence W. Newman, Baker & McKenzie, New York, NY, Hector Reichard, Jr., Lasa, Escalera & Reichard, San Juan, PR, Katarina Stipec–Rubio, San Juan, PR, for defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Before the court are defendants Foster Wheeler Corporation (FWC), Foster Wheeler Power Systems (FWPS), Foster Wheeler

Trading Company's (FWTC) (collectively Foster Wheeler Defendants or Defendants) motion for summary judgment for lack of personal jurisdiction and to transfer venue under 28 U.S.C. § 1404(a) (Docket No. 8, 9, and 10) as well as subsequent memoranda in support. Also before the court are plaintiffs' timely objections and memoranda in opposition of defendants' motions (Docket No. 20, 190). After reviewing the memoranda and other documents offered by the parties into the record, defendants' motions for summary judgment and transfer of venue are Denied.

## I. FACTUAL BACKGROUND

Plaintiffs in this action, Generadora de Electricidad del Caribe (GEC), Puerto Rico Resource Recovery Leasing (PRRRL), Caribbean Environmental Sales and Development Inc., (CESDI), all corporations organized and existing under the laws of Puerto Rico, and plaintiff Gustavo R. Diaz (Diaz) citizen of the State of Florida, instituted an action against the Foster Wheeler Defendants,[1] Edmundo Eisen, a citizen of Argentina and residing in Spain, BHL, Ltd. organized under the laws of the British Virgin Islands and Woodside, Ltd. organized under the laws of Switzerland. On February 1989, Diaz and GEC approached the Foster Wheeler defendants with a proposal to jointly develop power generation project (hereinafter the project) in the Dominican Republic. After numerous negotiations in several jurisdictions including various visits to Puerto Rico, an agreement was reached to form a Puerto Rico corporation, PRRRL, which would own and develop the proposed plant. The Foster Wheeler defendants would seek out the necessary financing for the project. A number of agreements were then executed in furtherance of the development of the project. Subsequently, the parties executed two contracts, the Construction Agreement (C–A) and the Operations and Maintenance Agreement (O–M–A), which were the main agreements governing the development and operation of the project. Plaintiffs allege, *inter alia*, that the Foster Wheeler defendants and their agent, Edmundo Eisen made several attempts to unjustifiably alter the terms of the contracts in their favor, including a demand that PRRRL issue stock to BHL. On March 12, 1993 the Foster Wheeler defendants notified plaintiffs that they were withdrawing from the project causing plaintiffs great expense. Plaintiffs responded by instituting this action for breach of contract and fraud.

## II. LACK OF PERSONAL JURISDICTION

### a. Standard for summary judgment

Both plaintiffs and the Foster Wheeler defendants (hereinafter defendants) in their motions refer to documents (i.e., letters, performance reports, etc.) outside the pleadings. Because the court here considers these supplementary materials, the summary judgement standard is both apposite and opportune. See *Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 19 (1st Cir.1992) ( "[T]he test is not whether supplementary materials were filed, but whether the court actually took cognizance of them, or invoked Rule 56, in arriving at its decision.").[2] Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e).

---

1. FWC is organized under the laws of New York with principal offices in New Jersey; FWPS is organized under the laws of Delaware also operating out of New Jersey; and FWTC organized under the laws of Switzerland.

2. In treating defendants' motion as one for summary judgement, the court is mindful of "the general rule that is improper for a district court to enter a judgment under Rule 56 for defendant because of a lack of jurisdiction." Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2713; *see*

At the summary judgment level, the evidence must be examined "drawing all reasonable inferences helpful to the party resisting summary judgement." *Cortes–Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 187 (1st Cir.1997); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) ("On summary judgement the inferences to be drawn from the underlying facts [ ] must be viewed in the light most favorable to the party opposing the motion."). If the party opposing summary judgment "generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgement is inappropriate." *Beacon Enterprises*, 715 F.2d at 762. At this stage, there is "no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood . . ." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987).

*b. Statutory and constitutional authority to exert personal jurisdiction*

 When a challenge to personal jurisdiction is made, "the burden of proving the facts necessary to sustain jurisdiction is on the plaintiff." *Escude Cruz v. Ortho Pharmaceutical Corp.* 619 F.2d 902, 903 (1st Cir. 1980). To meet this burden, plaintiff must make a prima facie showing that jurisdiction exists based on specific facts alleged in the pleadings, affidavits and exhibits. *Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 979 (1st Cir.1986). "If a plaintiff makes a prima facie showing of jurisdiction supported by specific facts alleged in the pleading, affidavits and exhibits, its burden is met." *Id.* "Plaintiff's allegations of jurisdictional facts are construed in its favor." *United States v. Arkwright, Incorporated*, 690 F.Supp. 1133 (D.N.H.1988) (citing *Ealing Corp.*, 790 F.2d at 979.).

 In cases such as this one where diversity is the basis of jurisdiction, the power of a district court to assert personal jurisdiction over a nonresident defendant is governed by the forum state's long arm statute. *Mangual v. General Battery Corp.*, 710 F.2d 15, 18 (1st Cir.1983); *Matosantos Commercial Co. v. Applebee's International*, 2 F.Supp.2d 191 (D.P.R.1998); *Rafael Margarida & Co., Inc., et al. v. Audi of America*, 721 F.Supp. 394 (D.P.R.1989). Puerto Rico's long arm statute 32 L.P.R.A., App. III, Rule 4.7 allows the extension of personal jurisdiction over nonresident defendants, among others instances, when the litigation arises out of transactions conducted in Puerto Rico.[3] The Due Process Clause of the Fourteenth Amendment, however, operates to limit the power of a forum to assert in personam jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1871, 80 L.Ed.2d 404 (1984). Thus, if authorized by the forum's long arm statute, "such exercise of personal jurisdiction must be found to be consistent with the due process requirement of the United States Constitution." *Davila–Fermin v. Southeast Bank, N.A.*, 738 F.Supp. 45, 47 (D.P.R.1990); *Matosantos*, 2 F.Supp.2d at 195 ("The federal court exercising diversity jurisdiction must find sufficient contacts between defendant and the forum in order to satisfy the state's long arm statute and to comply with the Fourteenth Amendment's due process clause.").

 Under Rule 4.7(a)(1), personal jurisdiction can be exerted over a nonresident defendant when such person "[t]ransacted business" in Puerto Rico. The term "business" is a general one which includes both commercial transactions as well of another nature. *Medina v. Tribunal Superior*, 104 D.P.R. 346, 355, 1975 WL 38701 (1975). The phrase "transacted business" in this context "is a practical not a technical or commercial one." *Industrial Siderurgica, Inc. v. Thyssen Steel Caribbean, Inc.*, 114 D.P.R. 548, 557, 1983 WL 204174 (1983)(translation ours); *Medina*, 104 D.P.R. 346. In addition, in *A.H. Thomas Co. v. Superior Court*, 98

also *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762 (2nd Cir.1983).

**3.** 32 L.R.P.A.App. III Rule 4.7 states in part: "(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person: (1) Transacted business in Puerto Rico personally or through an agent; . . ."

P.R.R. 864 (1970), the Supreme Court of Puerto Rico developed a three part test for determining when the Commonwealth's long arm statute allows the assertion of jurisdiction. Under this test: "[o]ne, there must be an act done or consummated within the forum by the nonresident defendant. Physical presence is not necessary; the act or transaction may be by mail. Two, the cause of action must arise out of the defendant's action within the forum state. Three, the activity linking defendant, forum and cause of action must be substantial enough to meet the due process requirement of 'fair play and substantial justice.'" *Ortho Pharmaceutical,* 619 F.2d 902, 904 (1980) (citing *A.H. Thomas,* 98 P.R.R. at 870).

 In addition to the forum's long arm statute, the Due Process Clause of the Fourteenth Amendment defines the limits of the state's power to assert personal jurisdiction. *Helicopteros Nacionales,* 466 U.S. at 413–414, 104 S.Ct. 1868; *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). As with the third prong of the *A.H. Thomas'* three part test, due process is satisfied when personal jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Helicopteros Nacionales,* 466 U.S. at 413–414, 104 S.Ct. 1868; *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In conducting such an inquiry, "[a]ll the facts must be evaluated to determine whether the defendant purposefully established minimum contacts within the forum." *Young v. Pannell Fitzpatrick & Co.,* 641 F.Supp. 581, 585 (D.P.R.1986) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985)). For such minimum contacts to be sufficient for the exertion of personal jurisdiction, they must be the result of a purposeful act by defendant. As the Supreme Court made clear "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) (citing *International Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154.). "[R]andom, isolated, or fortuitous" with the forum will not suffice. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). "Whether defendant's contact with the forum is described as an 'affirmative act' or 'purposeful availment,' the inherent foreseeability of consequences is one of the keystones of personal jurisdiction." *Ortho Pharmaceutical,* 619 F.2d at 904. Foreseeability, in turn, requires that a defendant's contacts in the forum be such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

### c. Personal Jurisdiction over the Foster Wheeler Defendants

 In light of the foregoing jurisprudence, the court finds that plaintiffs in this case have established sufficient facts to justify the assertion of personal jurisdiction against the Foster Wheeler defendants. The fact alleged in the complaint, together with the additional documents supplied by the parties, demonstrate sufficient "minimum contacts" to trigger Puerto Rico's long arm statute as well as satisfy the requirements of due process. First, defendants' physical presence in the forum to conduct business relating to the power generation project constitutes sufficient contact to satisfy Puerto Rico's long arm statute and the Due Process clause. In the instant case, the defendants through their agents entered Puerto Rico at least three different times to meet with plaintiffs regarding the project. (Plaintiff's Supplemental Memorandum Docket No. 190, p. 6; Defendants' Reply, Docket No. 192, p. 2). The first occurred on November of 1989 when Mr. Denis Toth representing the Foster Wheeler defendants, met with plaintiffs' attorneys "to explore the possibility of Pru-

dential Bache assisting the Foster Wheeler Group with the financing of a power generation project which the Foster Wheeler Group planned to develop with Mr. Gustavo Díaz and his companies..." (Docket No. 190, Exhibit 1).

On that same month, another Foster Wheeler agent, Edmundo J. Eisen came to Puerto Rico to meet with plaintiffs' lawyers regarding the power generation project. (Docket No. 190, Exhibit 1; Docket No. 192, p. 2). On this subsequent meeting, the participants engaged in discussions aimed at obtaining financing for the project through the issuance of CARIFA bonds in the 936 market ("936 funds"). (Docket No. 190, Exhibit 2; Docket No. 192, p. 2). In addition, Mr. Eisen was again in Puerto Rico on March 27, 1990. (Docket No. 190, p. 9; Docket No. 192, p. 3) The parties disagree as to the nature of the discussions between defendants' agent, Mr. Eisen, and plaintiffs' attorneys. Defendants' claim this visit was not business related or otherwise authorized by them. Plaintiffs, however, maintain Eisen and the participants at the March 27th meeting further addressed the use of 936 funds to finance the project. At that meeting, Eisen also discussed, amended and executed a letter of agreement dated March 23, 1990 which spelled out the initial steps of the project. (Docket No. 190, p. 11, and Exhibit 10).[4] Thus, in at least three separate occasions, defendants through their agents physically entered the jurisdiction to discuss and negotiate the proposed plan with plaintiffs and their agents.

These events constitute sufficient contacts with the forum to trigger Rule 4.7. In this case, defendants repeatedly entered the fo-

rum to transact business. Both Mr. Toth and Mr. Eisen came to Puerto Rico to begin and/or continue negotiations for the purpose of, and which resulted in, initial agreements to develop and finance the project. Under any definition of the term "transacted business" in Rule 4.7(a)(1), defendants' activities fall well within that required for the application of Puerto Rico's long arm statute.

In addition, these actions of defendants satisfy the *A.H. Thomas* three-pronged personal jurisdiction test. The first prong is met since, as noted above, there were repeated acts "done or consummated" by defendants within Puerto Rico. The second prong is also satisfied as plaintiffs' claims arise out of defendants' actions in the forum. Defendants assert that the contacts in Puerto Rico dealt with preliminary or hypothetical discussions and were many months before the execution of the main contracts, the Construction Agreement and the Operations and Maintenance Agreement (C–A and O–M–A). (Docket No. 190, p. 2). Because plaintiffs' suit involves the breach of the C–A and O–M–A, they argue, the suit cannot be said to "arise out of" defendant's contacts in Puerto Rico. Even if, *arguendo*, defendants' representations regarding the nature of the negotiations in Puerto Rico are correct,[5] such a reading of this second prong is too narrow. Defendants' visits to Puerto Rico involved the negotiations that lead to the execution of subsequent letters of agreement regarding the development of the project. These letters of agreement in turn resulted in, and were expressly incorporated into, the main C–A and O–M–A contracts. Defendants' contacts in Puerto Rico dealt directly with

---

4. In addition to the declaration of Jose A. Axtmayer and Ricardo Muniz (Docket No. 190, Exhibit 2 and 3), plaintiffs' assertion that Mr. Eisen's visit to Puerto Rico was business related and that he acted with authority is further supported by FWC's request of March 26, 1990 (one day prior to the meeting in Puerto Rico) that Mr. Eisen supply a "step by step written outline of the contracts and contracting parties contemplated by this proposal, including contractual terms and financial analysis," their authorization to proceed with the project (Docket No. 190, Exhibit 9), as well as the fact that defendants covered Mr. Eisen's expenses during the trip. (Docket No. 190, Exhibit 12). Moreover, the summary judgement standard requires that the facts be

viewed in the light most favorable to be nonmoving party, here plaintiffs. *Cortes–Irizarry*, 111 F.3d at 187. The "prima facie showing of [jurisdictional facts] supported by specific facts alleged in the pleadings, affidavits, and exhibits" proposed by plaintiff are sufficient. *Ealing Corp.*, 790 F.2d at 979.

5. At this juncture, however, the court does not take such representations as true since, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgement." *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995).

the financing and development of the power generation project. This is precisely what is at issue in this litigation. Plaintiffs' claims of breach of the C–A and O–M–A contracts, then, directly arise out of defendants' visits to the forum.[6]

Finally, defendants' contacts in Puerto Rico are sufficient to satisfy the third prong of the *A.H. Thomas* test and the Due Process Clause. Because both turn on whether 'traditional notions of fair play and substantial justice' have been complied with, the court analyzes them together. In this case, defendants' contacts in Puerto Rico were not only purposeful but also specifically directed to the forum so as to obtain the benefits and protections of its laws, justifying the exertion of personal jurisdiction. As noted above, defendants repeatedly entered the forum on business relating to the power generation project. Courts of this district have held that "purposeful physical entry into Puerto Rico to conduct business related to [the claim being litigated] constitutes sufficient contacts with the forum to satisfy both Puerto Rican statute and the due process clause." *Banco Popular de Puerto Rico v. Greenblatt*, 693 F.Supp. 1346, 1351 (D.P.R.1988). Moreover, in addition to physical entry into the forum, defendants agreed with plaintiffs to form a corporation (PRRRL) under the laws of Puerto Rico to be "the actual owner of the [power generating] facility and the recipient of the financing being arranged by Prudential Bache." (Docket 190, Exhibit 10). They executed contracts relating to the project that were to be governed under the laws of Puerto Rico. (Docket No. 190, Exhibit 11). They reached an agreement with plaintiffs and Prudential–Bache that allowed defendants to act on behalf of said Puerto Rican company "to procure Project financing." (Docket No. 190, Exhibits 2 and 3). Finally,

defendants engaged in negotiations and entered into agreements with other parties to secure financing for the project using 936 funds. (Docket No. 190, Exhibit 13). Funds which could be obtained in Puerto Rico. *See* 26 U.S.C. § 936 (1988).

The above factual scenario strongly suggests that defendants' contacts with the forum were not merely "incidental" or dealt with "hypothetical" discussions. On the contrary, defendants on various occasions entered Puerto Rico to engage in business activities, negotiated and reached agreements in Puerto Rico regarding the development of the project, contracted with a Puerto Rican corporation (GEC), and specifically agreed to establish a Puerto Rico corporation (PRRRL) to own and operate the project (even securing for themselves an optional right to own 51% of the corporation. Docket 190, Exhibit 6).[7] Defendants engaged in this conduct notwithstanding that they were located mostly in New York and New Jersey, and the power generation plant was to be located in the Dominican Republic. The court, thus, has no difficulty finding that defendants purposefully and specifically directed their efforts to avail themselves of the benefits of the 936 funds in this jurisdiction.

Contacts such as the ones defendants had in this case have been found by other courts to be sufficient to justify the exertion of personal jurisdiction. In *Greenblatt*, the court found that being physically present in Puerto Rico a few days a year to assess inventory (even when these acts were minimal compared with their contacts in other jurisdictions) was sufficient to support personal jurisdiction. *Greenblatt*, 693 F.Supp. at 1351. Moreover, in *Goldman Antonetti, et al. v. Medfit Intern. Inc.*, 982 F.2d 686 (1st Cir.1993), the defendant participated in negotiations which lead to the agreements that

---

**6.** Further, "[w]hen a cause of action arises from the defendant's contacts with the forum, less *is* required to support jurisdiction than when the cause of action is unrelated to those contacts." *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*, 557 F.2d 886, 889 (1st Cir.1977).

**7.** The First Circuit Court of Appeals in a "cascade of cases" enumerated in *McCarthy v. Northwest Airlines*, 56 F.3d 313, 315 (1st Cir.1995) and *Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st

Cir.1995), has cautioned trail judges that in examining summary judgment motions under Fed. R.Civ.P. 56(c) one must "draw all reasonable inferences in the nonmoving party's favor." *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993); *Libertad v. Welch*, 53 F.3d 428, 435 (1st Cir.1995) (the court must examine "the entire record in the light most favorable to the nonmovant indulging all reasonable inferences in that party's favor.").

were at issue in the litigation and was "personally and continuously involved in plaintiff's efforts to assist in the formation, development, and financing" of a company which was to be a Puerto Rico corporation. In light of these fact, among others, the Court of Appeals had no difficulty finding that defendant purposefully availed himself of the privilege of conducting activities within the local forum. *Goldman Antonetti*, 982 F.2d at 690–691.

Defendants' actions in this case can hardly be characterized as "random, isolated, or fortuitous." *Keeton*, 465 U.S. at 774, 104 S.Ct. 1473. On the contrary, they indicate to the court that defendants purposefully choose the forum specifically to avail themselves of the benefits and protections of its laws. Benefits including 936 funding which could not be obtained elsewhere. These efforts were not unilateral acts by plaintiffs, rather they constituted deliberate and affirmative acts of defendant directed towards Puerto Rico. Given these activities by defendants, calculated to secure the benefits of the jurisdiction, there is little doubt that a reasonable person could foresee that they might be required to defend an action in Puerto Rico. Thus, defendant's contacts with Puerto Rico constitute sufficient minimum contacts to impose personal jurisdiction over Defendants.

Defendants assert that the time spent in Puerto Rico was minimal in comparison as most of the meetings, telephone calls, and other activities relating to the project occurred outside the forum. They, however, misunderstand the nature of this jurisdictional inquiry. In determining whether minimum contacts exists to support the extension of personal jurisdiction, "[t]he court considers the contacts with Puerto Rico without regard to what the defendants did [elsewhere]." *Greenblatt*, 693 F.Supp. at 1351. In this case, plaintiffs have demonstrated sufficient facts to satisfy the requirements of Puerto Rico's long arm statute and the requirements of due process justifying the assertion of personal jurisdiction over Defendants. The amount of contacts in other jurisdictions is inconsequential. Accordingly, Defendant's motion for summary

judgement due to lack of personal jurisdiction is Denied.

## III. VENUE

■ Defendants' also moved to transfer venue to the District Court of New Jersey or alternatively to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). (Docket No. 10). Because the court has determined jurisdiction over the defendant, we now proceed to examine the issue of venue. Defendants here do not challenge the propriety of venue in this district under 28 U.S.C. § 1391. As such, "transfer will only be appropriate if in balancing the convenience of the parties, ease of access to sources of proof and the interest of justice the moving party carries the burden of establishing that these factors weight in favor of another forum." *Fash Obalco, Inc. v. M.K.M. Industries, Inc.*, 888 F.Supp. 344, 348 (D.P.R.1995); *Sergio Estrada Rivera Auto Corp. v. Kim*, 717 F.Supp. 969, 973 (D.P.R.1989) (The defendants have the burden to show that the factors enumerated in § 1404 predominate in favor of a transfer.).

■ "In deciding § 1404 transfer motions, 'substantial weight' is given to plaintiff's choice of forum." *Fash Obalco*, 888 F.Supp. at 349. Moreover, the Supreme Court specified that "unless the balance is strongly in favor of the defendants, the plaintiff's choice should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Thus, "a plaintiff's choice of forum should not be disturbed unless the reasons for transfer are clear and cogent." *Horwitz v. Southwest Forest Industries, Inc.*, 612 F.Supp. 179, 182 (D.Nev.1985) (citing *Williams v. Green Bay & W. R. Co.*, 326 U.S. 549, 554–555, n. 4, 66 S.Ct. 284, 287, n. 4, 90 L.Ed. 311 (1946) and *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843).

■ In the instant case, defendants have not made a clear showing that the § 1404 factors weigh in favor of another forum. First, when considering the convenience of the parties, defendants argue that "there should be no presumptions in favor of plaintiffs' choice of forum since plaintiffs do not reside in Puerto Rico." (Docket No. 8, p. 61). As such, they maintain, transfer to defen-

dants' state of residence New Jersey becomes an important factor in determining proper venue. Both of defendants' premises, however, are incorrect. Corporate plaintiffs, GEC, PRRRL, and CESDI are indeed corporations organized under the laws of Puerto Rico.[8] Also, aside from the Foster Wheeler defendants, there are other defendants in this action which are not citizens of New Jersey. Edmundo Eisen, BHL and Woodside, defendants in this action citizens of Argentina, the British Virgin Islands and Switzerland respectively. (Docket No. 8, p. 31) "Regardless of where this action is tried, should it proceed to trial, either the plaintiff or the defendants will be inconvenienced by having to travel a substantial distance." *Fash Obalco*, 888 F.Supp. at 348. The fact that defendants find this forum inconvenient is not sufficient to justify disturbing plaintiffs' choice of forum. A motion to transfer venue will not be granted if the result is merely to shift this inconvenience from one party to the other. *Id.*

Defendants also fail to overcome their burden when the convenience of witnesses and other evidence is considered. Defendants state that they intend to call approximately sixteen witnesses, four of which are present employees. (Docket No. 8 p. 39). As current employees, it is doubtful that defendants will experience any more than a minor inconvenience in securing their testimony in any forum where a trial is held. Out of the remaining twelve, only four reside in the New York Metropolitan area near defendants. In addition, plaintiffs have presented the declarations or sworn statements of at least four witnesses who may be called to testify at trial. All of them reside in Puerto Rico. As such the majority of witnesses do not reside in the greater New York Metropolitan area where defendants would have the court transfer this case. Moreover, a simple numerical analysis by defendants,

listing the number of witnesses that would be inconvenienced, is not sufficient. *Myers v. Pan American World Airways, Inc.*, 388 F.Supp. 1024 (D.P.R.1974). "Such a party must show the nature, substance, or materiality of the testimony to be offered by the prospective witnesses or must state generally what is expected to be proved by such witnesses." *Id.* at 1025 (citing *Jones Knitting Corp. v. A.M. Pullen & Co.*, 50 F.R.D. 311 (S.D.N.Y.1970)). Defendants have not complied with this requirement. As far as documents are concerned, most of the ones defendants intend to present are either in their possession or in jurisdictions other than New Jersey. (Docket No. 8, p. 40). While it may prove less economical to present these documents in Puerto Rico than New Jersey, securing such documents presents no overwhelming problem for defendants. Accordingly, defendants have failed to provide clear and cogent reasons to show that the convenience of witnesses and other evidence requires a transfer of venue.

Finally, the "interest of justice" does not require the transfer of this case to another forum. Defendants claim that the execution of the main contracts as well as other critical events relating to the power generation project occurred in places other than Puerto Rico. However, as noted in the discussion over personal jurisdiction, defendants engaged in numerous acts specifically directed towards Puerto Rico, causing damages to residents of the local forum. This jurisdiction has a clear interest in the adjudication of this case. Moreover, defendants offer no other sufficiently compelling reasons showing why the "interest of justice" factor would require transfer of venue.

Defendants have not clearly and cogently demonstrated that the § 1404 factors weigh in favor of transfer. Therefore, "plaintiff's choice of forum should not be disturbed."

---

**8.** Defendants attempt to gloss over this fact by characterizing these corporations as a "sham." Their assessment on this point, however, is seriously undercut by the fact that defendants': 1) agreed with one of these corporations (GEC) to the formation of another (PRRRL); 2) dealt, negotiated and executed contracts with all of them as corporate entities; and 3) agreed to act as an agent of, and seek financing for, PRRRL to engage in the development of the power generation facility. Even if an argument could be made in support of defendants' allegation, the summary judgment standard requires that the court to view the facts in the light most favorable to the nonmoving party. Thus, the court rejects defendants' invitation to find that no plaintiffs are residents of Puerto Rico.

*Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. 839. The court will not disrupt plaintiffs' choice of forum since mere inconvenience in litigating in this forum is insufficient under § 1404 to warrant a change in venue. Accordingly, defendants' motion to transfer venue is Denied.

WHEREFORE, the court hereby denies defendants' motions to dismiss for lack of personal jurisdiction and to transfer venue.

IT IS SO ORDERED.